FILED

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

NOV 2  10 05 AM '99

Civil Action Number:
98-CV-11346-NG

|  |  |
|---|---|
| BRONWYN FORD, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **SECOND AMENDED** |
| ) | **COMPLAINT WITH JURY** |
| CITY OF BOSTON; SUFFOLK ) | **DEMAND** |
| COUNTY; RICHARD ROUSE,SHERIFF ) | [Addition of Count VI |
| OF SUFFOLK COUNTY, ) | and punitive damages] |
| Defendants ) | |
| ) | |

### INTRODUCTION

This is an action for damages brought pursuant to 42 U.S.C. §§1983 and 1988, and the Fourth, Eighth and Fourteenth Amendments to the United States Constitution, and under the common-law of the Commonwealth of Massachusetts, against the above-named defendants. Jurisdiction is based upon 28 U.S.C. §§1331 and 1343, and on the pendent jurisdiction of this court to entertain claims arising under state law.

Plaintiff alleges that she was negligently arrested on a defective warrant. Plaintiff also alleges that as a result, she was subjected to two strip searches, and refused medical attention in violation of Fourth, Eighth and Fourteenth Amendments of the U.S. Constitution. It is further alleged that these violations and torts were committed as a result of policies and customs of the above-named defendants.

## PARTIES

3. The Plaintiff, Bronwyn Ford (hereinafter "Plaintiff" or "Ms. Ford"), is an individual residing at 15 Kennedy Drive, Pelham, New Hampshire.

4. Defendant, City of Boston, is a municipal corporation.

5. Defendant, Suffolk County, is a duly designated county in the Commonwealth of Massachusetts, under the laws of the Commonwealth of Massachusetts.

6. Defendant, Sheriff, Suffolk County, oversees the Nashua Street Jail.

## FACTS

7. On or about May 13, 1996, a complaint was filed against Ms. Ford for malicious destruction of property in violation of G.L. c. 266, §127.

8. On or about August 30, 1996, a hearing was held in Lynn District Court at which time the Court continued the case without a finding until November 29, 1996.

9. At the August 30, 1996, hearing, the Court also assessed restitution in the amount of $290.00 and imposed a $50.00 victim/witness fee.

10. Ms. Ford was to pay said restitution and victim/witness fee on or before November 29, 1996.

11. Ms. Ford paid said restitution and victim/witness fee on November 26, 1996.

2

12. On November 29, 1996, Ms. Ford was defaulted for failure to pay said restitution and victim/witness fee.

13. On or about December 4, 1996, the clerk's office of the Lynn District Court issued a warrant for the arrest of Ms. Ford due to the default.

14. Ms. Ford was arrested at her residence on or about February 19, 1997.

15. During the arrest, Ms. Ford's arm was unnecessarily twisted violently behind her for no reason and only after she asked the officers for photo identification.

16. Ms. Ford was transported to Boston Police station at Berkeley Street for booking.

17. Ms. Ford, while at Berkeley Street facility, was strip-searched.

18. Thereafter, Ms. Ford was transported to Nashua Street County Jail, where, once again, she was strip-searched.

19. Ms. Ford was detained at Nashua Street County Jail overnight.

20. While detained, Ms. Ford's personal belongings were confiscated by the officers.

21. During her detention, Ms Ford repeatedly asked for her medication (in her pocketbook) which was prescribed by her doctor for a serious health condition.

22. Despite Ms. Ford's pleas for her medication, she was refused.

23. On or about February 20, 1997, Ms. Ford was transported to Lynn District Court.

24. While detained in a holding cell, Ms. Ford pleaded for her medication.

25. Despite her pleas, Ms. Ford was refused her medication.

26. When finally presented to the court, the judge, after careful review of the docket, dismissed the case against Ms. Ford stating that the "warrant was issued in error."

27. At no time during the events described above, was Plaintiff intoxicated, incapacitated, a threat to the safety of herself or others, or disorderly.

28. The City of Boston has a policy of treating women differently than men.

29. Pursuant to the City of Boston Police Department Rules and Procedures (attached hereto and marked Exhibit "1"), Rule 318, Sec. 9, entitled "FEMALES", states "All female prisoners, after being booked in accordance with the rules and procedures of the Department, shall be sent as soon as possible to the Suffolk County Jail in a Department vehicle." The rule goes on to state "Female prisoners shall be searched by a female Boston Police Officer. If no female police officer is available, the prisoner shall be transported to the Suffolk County Jail to be searched."

30. There is no similar rule regarding men.

31. On or about June 9, 1997, the Commonwealth of Massachusetts, City of Lynn, City of Boston and Lynn District Court were all served presentment letters pursuant to G.L. c. 258.

### COUNT I
### Ford v. City of Boston
### *(Negligent Infliction of Emotional Distress)*

32. Plaintiff repeats, realleges and incorporates by reference as if set forth hereto in their entirety Paragraphs 1 through 31 above.

33. By the conduct and actions towards Plaintiff by the strip searches, as described above, the Defendant named hereunder Count II, negligently inflicted or knew or should have known that its conduct would result in severe emotional distress.

34. The Defendant's (named hereunder Count I) conduct as described herein, was extreme and outrageous.

35. As a direct result of the conduct and actions towards Plaintiff, as described above, the Defendant named hereunder Count I, caused Plaintiff's severe emotional distress.

36. Plaintiff's severe emotional distress caused her to experience physical pain and distress.

37. As a direct result of the conduct and actions towards Plaintiff, as described above, Ms. Ford suffered and continues to suffer severe injuries of body and mind, incurred expenses for medical care and attendance, and other losses, to which no reasonable person could be expected to endure.

5

WHEREFORE, the Plaintiff demands judgment against the Defendants named hereunder Count I, on Count I of her complaint, plus interest, attorneys fees' and costs of this action.

## COUNT II
### Ford v. City of Boston

**(Violation of Fourth, Eighth and Fourteenth Amendments of the Constitution of the United States)**

38. Count II has previously been dismissed.

## COUNT III
### Ford v. Suffolk County
### Ford v. Richard Rouse, Sheriff, Suffolk County

**(Violation of Fourth, Eighth and Fourteenth Amendments of the Constitution of the United States)**

39. Plaintiff repeats, realleges and incorporates by reference as if set forth hereto in their entirety Paragraphs 1 through 38 above.

40. While imprisoned at the Nashua Street Jail, Plaintiff was strip searched.

41. The strip search was required by Suffolk County Sheriff's Department's Departmental Policy Number s507. This policy states that "strip searches shall be conducted of all inmates committed to the custody of the Department…" The policy requires a strip search of the nude body of every person "at the time of each admission to the facility…" The policy also requires a visual body cavity search of a prisoner's anus and vagina.

42. The policy of the Suffolk County Sheriff's Department does not require any cause for conducting a strip search and visual body cavity search of a person arrested on a misdemeanor, on a

minor vehicle offense, or for protective custody, who is admitted to the Nashua Street Jail for any length of time.

43. These routine searches are conducted without any reason to believe the person has anything concealed on her person.

44. The policy of the Suffolk County Sheriff's Department regarding strip searches directs county employees to conduct searches that violate the Fourth Amendment of the Unites States Constitution.

45. In addition, as described above, Defendants were deliberately indifferent to Plaintiff's medical needs, as they refused her medication.

46. Defendants followed policies and/or customs which enabled deliberate indifference, as described above, and caused the violation of Plaintiff's constitutional rights.

47. As a result of certain policies and/or customs, as described above, Plaintiff was subjected to two strip-searches and experienced physical injury due to Defendants' refusal to provide Plaintiff her medication for a serious health condition.

48. As a direct and proximate cause of the Defendants' conduct, as described above, Ms. Ford suffered and continues to suffer injuries of body and mind, incurred expenses for medical care and attendance, and other losses.

7

WHEREFORE, the Plaintiff demands judgment against the Defendants (named hereunder Count III), on Count III of her complaint, plus interest, attorneys fees' and costs of this action and punitive damages as to Richard Rouse.

## COUNT IV

### Ford v. Richard Rouse, Sheriff, Suffolk County
### Ford v. City of Boston
### Ford v. Suffolk County

### (Violation of Article XIV of the
### Constitution of the Commonwealth of Massachusetts)

49. Plaintiff repeats, realleges and incorporates by reference as if set forth hereto in their entirety Paragraphs 1 through 48 above.

50. As described above, Plaintiff was negligently arrested on a negligently issued arrest warrant.

51. Excessive force was used by the Boston Police during Plaintiff's arrest.

52. As a result of being negligently arrested on a defective warrant, Plaintiff was imprisoned, during which time she was subjected to two strip-searches and experienced physical injury due to Defendants' refusal to provide Plaintiff her medication for a serious health condition.

53. As a direct and proximate cause of the Defendants' (named hereunder Count IV) conduct, as described above, Ms. Ford suffered and continues to suffer injuries of body and mind, incurred expenses for medical care and attendance, and other losses.

8

WHEREFORE, the Plaintiff demands judgment against the Defendants (named hereunder Count IV), on Count IV of her complaint, plus interest, attorneys fees' and costs of this action and punitive damages as to Richard Rouse.

### COUNT V
**Ford v. Richard Rouse, Sheriff, Suffolk County**
**Ford v. City of Boston**
**Ford v. Suffolk County**

*(Violation of 42 U.S.C. 1983)*

54. Plaintiff repeats, realleges and incorporates by reference as if set forth hereto in their entirety Paragraphs 1 through 53 above.

55. Defendants (named hereunder Count V), maintained policies and/or customs exhibiting deliberate indifference to the constitutional rights of Plaintiff and by its actions as described above, violated the Fourth, Eighth and Fourteenth Amendments of the U.S. Constitution.

56. As a direct and proximate cause of Defendants' (named hereunder Count V) conduct, as described above, Ms. Ford suffered and continues to suffer injuries of body and mind, incurred expenses for medical care and attendance, and other losses.

WHEREFORE, the Plaintiff demands judgment against the Defendants (named hereunder Count V), on Count V of her complaint, plus interest, attorneys fees' and costs of this action and punitive damages as to Richard Rouse.

## COUNT VI
Ford v. City of Boston

### (Violation of Equal Protection of the Constitution of the United States – 42 U.S.C. § 1983)

57. Plaintiff repeats, realleges and incorporates by reference as if set forth hereto in their entirety Paragraphs 1 through 56 above.

58. By requiring female prisoners be held at the Suffolk County Jail, it is the policy or procedure of the City of Boston Police Department to automatically transport female prisoners to Suffolk County Jail while men in the same situation are not required to be transported to Suffolk County Jail.

59. The transportation of female prisoners as described above, violates the right of a woman to the equal protection of law.

WHEREFORE, the Plaintiff demands judgment against the Defendant (named hereunder Count VI), on Count VI of her complaint, plus interest, attorneys fees' and costs of this action.

**THE PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS.**

Respectfully submitted,
BRONWYN FORD,
by her attorneys,

_____
Eric N. Klein, Esq.
BBO# 631309
185 Devonshire Street
Suite 200
Boston, MA  02110
(617) 482-7600

Of Counsel:
Audrey J. Samit, Esq.
BBO# 559271

Dated: _Nov 1, 1999_

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the
above document was served upon the
attorney of record for each other party
by mail-hand on _March 1, 1999_

11

# Exhibit A

Boston Police Department                                    Rules and Procedures

**RULE 318**
**May 26, 1995**

## PRISONERS

---

This rule is issued to establish guidelines for the care and treatment of prisoners, including persons held in protective custody (Rule 318-A) and juveniles held in custody (Rule 318-B). It replaces Rule 318, dated February 28, 1990, and supersedes all previously issued Rules, Orders, Memorandums, Bulletins and directives concerning the processing, safekeeping and treatment of prisoners in the custody of members of this Department, at the House of Detention and the Juvenile Pre-Arraignment Facility.

**GENERAL CONSIDERATIONS:** Officers shall be held strictly responsible for the safe custody of the prisoners under their care and this responsibility is theirs at all times. Prisoners and suspects shall be treated in a fair and humane manner and the rights to which they are entitled shall be respected.

**Sec. 1 ARREST PROCEDURE:** Except when otherwise ordered or allowed, every person arrested shall be taken at once to the station house of the District wherein such person was arrested where a computerized Department Booking Sheet (hereinafter referred to as a "Booking Sheet") shall be completed promptly by a Booking Officer who shall then photograph and fingerprint the arrested person using the Integrated Identification Imaging System. **In addition to being processed using the Integrated Identification Imaging System, all suspects arrested for homicide, rape and other serious offenses, as determined by the Duty Supervisor, shall have a full set of inked prints taken by a trained fingerprint technician.**

**Sec. 2 EXAMINATION FOR VISIBLE INJURIES:** When a person under arrest or in protective custody is brought to a station for an original booking, or one who has been previously booked at another facility is being surrendered to a receiving facility, the Duty Supervisor shall immediately examine the prisoner and if he finds cuts, bruises or other injuries shall forthwith make a written report thereof to the Commanding Officer (M.G.L. c. 276 § 33). For the purposes of M.G.L. c. 276 § 33, a Booking Sheet shall be considered sufficient documentation of injuries and shall be forwarded to the Chief, Office of Internal Investigations. If a Booking Officer has been designated, it is the responsibility of that officer to notify the Duty Supervisor of any injuries to the prisoner.

If a prisoner is suffering from wounds or injuries which appear to have been inflicted during the arrest process, the Duty Supervisor shall record the fact on the Booking Sheet and notify the Commanding Officer. The Commanding Officer shall forthwith inquire into the circumstances of the case and if it appears that any injuries on a prisoner are incidental to the arrest process he shall initiate an investigation and shall submit a full and complete report to the Police Commissioner.

When a person in custody is found to be suffering from wounds or injuries requiring medical attention, the Duty Supervisor shall summon medical assistance. If so advised, the prisoner shall be sent to a hospital. Such person, if under arrest, shall be in the legal custody of the police.

Boston Police Department

Rules and Procedures

RULE 318

**Sec. 3  SICKNESS OR INJURY:**  Seriously injured prisoners will receive medical attention at a hospital prior to the booking process.

When officers transport a prisoner to a hospital or medical facility prior to the booking process, the prisoner's property shall be inventoried and held by the hospital.  Contraband or evidence shall be handled in accordance with **Rule 309, Evidence and Found Property.**

In the event that a prisoner is transported to a hospital or medical facility after the booking process, his/her property will remain in the custody of the District.

When a prisoner is unconscious, the Duty Supervisor shall be notified, every effort shall be made to restore consciousness and medical assistance shall be summoned.

Any unusual appearance or behavior displayed by a prisoner shall receive immediate attention.

Properly prescribed medicines found to be in the prisoner's possession shall be taken into custody.  If the person in custody so requests, the Duty Supervisor shall allow a proper dosage, as prescribed on the medicine label, to be given to the prisoner.  Dosages and their frequency of ingestion, shall not exceed the limitations set forth on the medicine container. Each dose of medication issued shall be recorded on the appropriate form for that prisoner, using the Integrated Identification Imaging System, by the Duty Supervisor or a Booking Officer.

**Sec. 4  BOOKING PROCEDURES:**  All persons taken to a station house under arrest shall be placed before a Booking Officer where they shall be booked under the direction of the Duty Supervisor or his designee.  The Duty Supervisor's authority to designate officers to process prisoners does not relieve the Duty Supervisor of his responsibility for the booking process.

**No person may be designated as a Booking Officer unless they have been trained in the use and operation of the Integrated Identification Imaging System.  Arresting officers, regardless of whether or not they have been so trained, shall not serve as the Booking Officer for their own prisoner(s).**

In addition, no person may operate an Integrated Identification Imaging System terminal unless they have been trained in their use **and are properly logged onto the system.** Duty Supervisors and designated Booking Officers shall ensure that they properly log on and off the system to prevent unauthorized persons from gaining access to it.

The Duty Supervisor will also designate a Boston Police Officer to conduct a search of the person and be responsible for the removal of all personal property from the prisoner.  The searching officer will ensure that all items, such as belts, neckties, boots, shoes and laces, or any article which might be used for suicidal purposes are taken from the prisoner,

whether during an original booking or a prisoner being received from another police facility, whether or not previously booked.

The Booking Officer shall book, photograph and fingerprint all arrested persons using the Integrated Identification Imaging System.  In so doing, the Booking Officer shall:

A.  Properly complete the computerized Booking Sheet.  **(All appropriate spaces on the Booking Sheet shall be completed.)**

B.  Ensure that they properly photograph any visible scars, marks, tattoos, injuries or amputations of all prisoners being booked.

C.  Ensure that the prisoner's personal property is properly inventoried.

Ensure that all money and other property taken from a prisoner shall be placed in a Prisoner's Property Envelope and that the property is safeguarded in accordance with Department policy and procedures.  (Refer to Section 7 of this rule.)

The legitimate purposes of an inventory (custodial) search are:  (1) the safeguarding of the prisoner's property, (2) the protection of police officers from charges of theft, (3) the ascertainment of or the verification of the identity of a prisoner and (4) the keeping out of the cells anything dangerous to the prisoner, other prisoners, visitors, and police officers.  While conducting an inventory (custodial) search, a police officer may open a closed container and examine its contents solely to meet the legitimate purposes of the inventory (custodial) search stated above.  Documents or other records may be read or otherwise examined only to the extent necessary for such inventory purposes, including identity checking, and ensuring the arrestee's physical well-being.

**In the case of large sums of money or property of unusually high value coming into the custody of the Department, the District Commander shall take whatever precautions necessary to safeguard that money or property.**

D.  Ensure the removal from the prisoner(s) of belts, neckties, boots, shoes, and any other property which may be used for suicidal purposes.

E.  **Check the state's on-line suicide list prior to transmitting an arrested person's booking information to the Identification Unit for verification.**

F.  Upon completion of the booking process, transmit the booking information to the Identification Unit for acceptance, verification and confirmation.  Prisoners shall then be eligible for bail in accordance with the restrictions stated below in Section 7, Booking Verification, "Bail Considerations".

G.  When a prisoner is being surrendered to another facility, the Juvenile Pre-Arraignment Facility or another law enforcement agency, the prisoner's property shall be handed over to the officer responsible for transporting the prisoner

accompanied by a **Prisoner Transportation Sheet** and a **Booking Sheet** for each prisoner so transfered. The transporting officer shall acknowledge receipt of the prisoner's property by signing the arrest sheet above the signature of the prisoner.

The transporting officer shall deliver the prisoner's property and the above forms to the person in charge at the receiving District or agency who shall care for the prisoner's property in accordance with the provisions of this rule. In the case of the Juvenile Detention Facility, the Transporting Officer should deliver the property to the Duty Supervisor or the person in charge of that facility.

**Sec. 5  USE OF TELEPHONE:**  The Duty Supervisor of a station house wherein a person is held in custody shall permit the use of the telephone within one hour for the purpose of allowing the person in custody to communicate with his family or friends, or to arrange for release on bail, or to engage the services of an attorney. If the prisoner has no funds the Department phone may be used (M.G.L. c. 276 § 33A).

**Sec. 6  FINGERPRINTING AND PHOTOGRAPHING:**  State law mandates that whoever is arrested by virtue of process or is taken into custody by an officer and charged with the commission of a felony shall be fingerprinted according to the system of the Identification Section and the Department of Public Safety and may be photographed (M.G.L. c. 263 § 1A).

In addition, under this Rule, all persons arrested and booked at a Boston Police District station house shall be fingerprinted and photographed by the Duty Supervisor, or a designated Booking Officer, using the Integrated Identification Imaging System and in accordance with the operating procedures governing such use.

Booking Officers shall ensure that they properly log on and off the system and to the extent possible, restrict unauthorized personnel from accessing the terminal.

Upon completing the booking process for an arrested person, the Booking Officer shall transmit the information to the Identification Unit for verification and confirmation. Booking information that is determined by the Identification Unit to be incomplete or unacceptable shall be re-transmitted once appropriate corrections have been made.

**Sec. 7  BOOKING VERIFICATION:**  The Identification Unit shall be responsible for ensuring the quality of all prisoner photographs (mugshots) and fingerprint images entered into the Integrated Identification Imaging System by the District Booking Officers and received at the Identification Unit on one of the several computer workstations dedicated to booking verification.

Identification Unit personnel shall ensure such quality control by making sure that District Booking Officers enter clear photographs and readable fingerprint images into the Integrated Identification Imaging System. Identification Unit personnel shall also be responsible for classifying fingerprints and sending a confirmation message to the District

Booking Officer once such classification and verification has been completed. However, Identification Unit personnel shall not classify or verify a booking until the entire file has been accepted.

Identification Unit personnel assigned to booking verification shall ensure that:

1. Photographic images are clear;

2. Fingerprints are both clear and readable;

3. Information received is full and complete (i.e., race and sex match photo image, reported tattoos or scars are photographed, et al);

4. Unacceptable or incomplete records are rejected and the appropriate District station notified electronically in order that corrections may be made;

5. Booking records, once accepted, are promptly classified and checked against the central computer database in an attempt to identify the arrested person;

6. Upon completion of the classification and verification process, the appropriate forms are entered in the booking record and a computer confirmation message is sent to the District station for disposition.

In addition, Identification Unit personnel shall notify the District Booking Officer (by both telephone and computer confirmation ) of any "Master Name" on file for the offender.

Upon receiving such notification, District Booking Officers shall print an updated copy of the Booking Sheet and destroy all copies of the Booking Sheet that do not have the "Master Name" on it. District Booking Officers shall ensure that arresting officers are given an updated copy of the Booking Sheet.

**Delayed Prisoner Processing Procedures:** In the event the Integrated Identification Imaging System central database is down for service or communication links with the District booking stations are not functioning and the system cannot be brought back on line within a reasonable period of time, Duty Supervisors shall ensure that the following procedures are followed:

1. All booking information will be temporarily stored locally on the booking District's hard drive until such time as communication with the central database has been restored and the information can be transferred (uploaded).

2. Hard copies of the booking information (photographs and fingerprints) shall be printed out at the District and hand-carried to the Identification Unit where they shall be verified by Identification Unit personnel.

**Bail Considerations:** No prisoner arrested for a felony or for a violation of M.G.L. c. 209A shall be considered eligible for bail until their booking information has been accepted and verified by the Identification Unit. All other prisoners shall be

considered eligible for bail once Identification Unit personnel have determined that their fingerprints are readable, their photographic images are clear and their booking information is full and complete.

## Sec. 8 PERSONAL PROPERTY HELD AS EVIDENCE: When any property taken from a prisoner is to be held for evidence, the following procedures shall be followed:

A. Property held as evidence shall be placed in a Property Envelope, and/or appropriately tagged, and a notation shall be made on the Incident Report and the Booking Sheet.

B. The size and type of evidence shall be the determinants of the methods used to prevent contamination thereof, and to protect the continuity of possession of the evidence.

C. Cash property shall always be designated as "bills" and/or "coin" and the total amount held shall be entered on the Booking Sheet.

D. The property section of the Booking Sheet shall be utilized to designate all property being held as evidence.

E. If for any reason a prisoner is unable or unwilling to sign for the receipt of his property, the Booking Officer shall sign in the space provided for the prisoner's signature and shall record the reason that the prisoner did not sign for himself.

F. If a partial return of property is to be made, the District hard copy of the Booking Sheet shall have a notation made on it so that only that property which is not returned to an individual is listed. The prisoner shall sign for his property, in the space provided, on the Booking Sheet in the presence of the Booking Officer.

G. Upon completion of the prisoner's receipt, the property held as evidence which is taken from the prisoner, shall be transferred to the proper unit for the tests and use to be made of it (as determined by the type of evidence); ensuring the continuity of possession by obtaining the signature of the unit member who receives it. A receipt for all evidence shall be stapled into the unit's Receipt Book.

**Any officer who accepts a receipt for property, under any circumstances, shall enter his initials and ID number immediately above the signature on a receipt for property.**

## Sec. 9 FEMALES: All female prisoners, after being booked in accordance with the rules and procedures of the Department, shall be sent as soon as possible to the Suffolk County Jail in a Department vehicle.

Female prisoners shall be searched by a female Boston Police Officer. If no female police officer is available, the prisoner shall be transported to the Suffolk County Jail to be searched.

**Boston Police Department**

Rules and Procedures

**RULE 318**

It shall be the responsibility of the operator of the police vehicle to notify the Operations Division Dispatcher via radio transmission of the point of departure, the exact time and the odometer reading. Upon their arrival at their destination they will again notify the Operations Division and again give the time, vehicle mileage and odometer reading.

**THE ONLY TIME WHEN MALE AND FEMALE PRISONERS MAY BE TRANSPORTED TOGETHER IS IF THEY ARE ARRESTED TOGETHER FOR COMPLICITY IN THE SAME OFFENSE. THEN, THEY MAY ONLY BE TRANSPORTED FROM THE SCENE OF THE CRIME TO THE STATION FOR THE BOOKING PROCESS.**

Any article taken from a female prisoner when she is booked at a station house which may be regarded as evidence shall be handled as provided under the section concerning evidence and retained for presentation in court (Rule 309, Evidence/Found Property).

Female prisoners in police custody shall not be confined in a cell within a cell-block at any station house. Whenever the temporary detention of a female prisoner is necessary, she shall be placed in a detention room, when one is available, or in a secured room to be held under guard.

**Sec. 10  JUVENILES:** When an individual who appears to be intoxicated is taken into police custody and is found to be under the legal age at which alcoholic beverages may be bought, the Duty Supervisor shall endeavor by all proper means to ascertain the place or places at which the minor obtained the liquor. A report of the results of the inquiry shall be noted on the Incident Report, BPD Form1.1.

Prisoners under seventeen years of age shall not be carried in a vehicle which is occupied at the same time by a prisoner above that age, except when the prisoner under seventeen has been arrested in the company of that older person or for complicity in the same offense.

**For further information on dealing with juvenile prisoners, refer to Rule 318-B.**

**Sec. 11  DISABLED PERSONS:** Department personnel will make every effort to accommodate any disabled person taken into custody and provide reasonably speedy bail.

Pursuant to M.G.L. c. 221 § 92A, whenever a deaf or hearing impaired person is arrested for an alleged violation of a criminal law or ordinance, arrangements shall be made through the Operations Division to provide a qualified interpreter to assist such person regarding any interrogation, warning, notification of rights or taking of a statement. Any admission or statement made by a hearing-impaired person made in the absence of a qualified interpreter or a voluntary waiver will not be admissible in court.

**Sec. 12  CELL INSPECTION:** Prisoners who are not bailed shall be placed in cells with no more force being used than is necessary to overcome resistance.

**Boston Police Department**

Prior to placing a prisoner in a cell, an officer will examine the cell for any unauthorized articles and remove them. This officer will also check the locking mechanism to ensure it is not defective. Defective cells are not to be used. If the cell is defective the Duty Supervisor will be notified, who will contact the building superintendent. A note of the problem will be entered on the District Administrative Log. If contact cannot be made with the building superintendent, a report will be left for the District Commander, who will make the notification.

**Sec. 13  PRISONER INSPECTION:**  The Duty Supervisor or the Director of the Juvenile Pre-Arraignment Facility shall visit, or cause to be visited, all persons in their custody at least **once every fifteen minutes**, and shall ensure that each visit is recorded in the **Prisoner Inspection Record** (M.G.L. c. 40 § 36B).

**Sec. 14  SUICIDES AND ATTEMPTED SUICIDES:**  Whenever, in the opinion of the Duty Supervisor or the person in charge of any police facility, a prisoner shows indications that he may attempt to commit suicide (e.g. extreme depression, anxiety), the Duty Supervisor or person in charge of that facility shall be responsible for taking all reasonable precautions to prevent such an attempt.

The Duty Supervisor shall immediately ensure that the prisoner is closely monitored. The Duty Supervisor shall then notify the Duty Supervisor at the Operations Division who shall dispatch appropriate medical personnel to the scene to make an evaluation as to whether medical treatment is required or whether the prisoner should be hospitalized. If such medical assistance is unavailable, the Duty Supervisor shall have the prisoner transported to a hospital, accompanied by police officers, where a determination can be made as to whether he is suicidal.

Department personnel receiving prisoners should familiarize themselves with any information provided by the Department concerning the past history of individuals who may come into their custody.

Whenever a person in police custody attempts or threatens suicide at a lockup facility, the Booking Officer or in the case of the Juvenile Pre-Arraignment Facility, the Duty Supervisor of District A-1, shall immediately telephone the Teletype Unit of the Operations Division, providing the name of the subject, current address, date of birth, the charge(s) for which the subject is being detained, and the date, time and nature of the attempt or threat. The Teletype Unit shall then send an administrative message to the Criminal History Systems Board. A copy of the report pertaining to the attempted or threatened suicide shall be forwarded to the Office of Planning and Research.

If a person attempts or threatens suicide in a lockup facility and is transferred to another lockup facility, the Duty Supervisor shall deliver, or caused to be delivered, to the receiving facility at the time of delivery of the prisoner, a copy of the Incident Report, BPD Form 1.1, relating to the attempted or threatened suicide.

**Boston Police Department**

Rules and Procedures

RULE 318

Whenever a person in the custody of the police Department has committed suicide, the Duty Supervisor shall **immediately** notify the Operations Division Duty Supervisor who shall notify the Internal Affairs Division, the Homicide Unit and the Medical Examiner's office. The cell in which a suicide has occurred shall be secured and not used until viewed by the Medical Examiner.

The District Commander of a lockup facility, or in the case of the Juvenile Pre-Arraignment Facility, the Commander of District A-1, shall file an Incident Report, BPD Form 1.1 and a Special Report, BPD Form 26, through appropriate channels to the Office of the Police Commissioner, whenever a person in police custody commits suicide, dies, or inflicts self-injury at a lockup facility which subsequently results in his/her death. The report shall identify the deceased and describe, in complete detail, the circumstances of the death. A copy of the report shall also be forwarded to the Office of the Medical Examiner.

**Sec. 15  FOOD/SERVICES:**  No member of the force or employee of the Department shall accept a fee for rendering any services to persons in custody; nor shall any member or employee receive any money or any item of value from a prisoner for any purpose whatsoever without the knowledge and consent of the Duty Supervisor.  (See **Rule 102, Sec. 22, Gifts/Gratuities.**)

Police officers shall not recommend to prisoners or others the employment of any specified person as attorney or counsel, nor shall they furnish the names of persons as bondsmen or be concerned in matters of bail, other than as prescribed in **Rule 321, Bail and Bail Commissioners.**

Prisoners shall be made as comfortable as possible. They shall be supplied with clean water to drink.

Prisoners shall not be allowed to receive food or drink other than that which is supplied to the Department by authorized vendors.

**Sec. 16  AUTHORIZED VISITORS:**  No person shall visit with a prisoner unless authorized by the Duty Supervisor, and then only in the presence and hearing of a police officer assigned for that purpose.  However, when a prisoner has retained counsel he shall be allowed to consult with his counsel in a secured area, within the sight of, but not within hearing of, the Duty Supervisor or an officer assigned for that purpose.

The Duty Supervisor may restrict visits by friends and relatives subject to the availability of personnel, presentation of identification and the needs of the Department.

**Sec. 17  TRANSPORTATION:**  Persons arrested while the Municipal Court or District Courts are in session, who are in a fit condition, shall be taken before said Courts; but if not in a fit condition, such persons shall be detained until they are in a fit condition, unless otherwise lawfully disposed.

**Boston Police Department**

**Rules and Procedures**

**RULE 318**

Prisoners shall not be transported in vehicles in excess of the seating capacity. When necessary, extra trips shall be made and prisoners awaiting transportation to court shall be returned to cells.

Duty Supervisors shall ensure that no prisoner is transferred from a station to a court, or elsewhere, who is not decently clothed.

Prisoners transported from station houses to other places for any purpose whatsoever, shall be guarded by a sufficient number of patrol personnel and shall be restrained individually or to other prisoners in accordance with Department Rule No. 315, **Handcuffs**.

**HANDCUFFS SHALL NOT BE REMOVED EXCEPT TO FACILITATE FINGERPRINTING, WRITING ON FORMS OR WHEN OTHERWISE ABSOLUTELY NECESSARY.**

**Sec. 18 ESCAPES:** Whenever a prisoner escapes, the Duty Supervisor will be notified immediately. If the escape is from a cell, all exits from cell-blocks, as well as the building, will be secured by a sufficient number of officers and an orderly, methodical search will be conducted.

If an escaped prisoner cannot be immediately located, the Duty Supervisor will immediately notify the Operations Division, furnishing a complete description, name and address and the nature of the arrest. This information will be broadcast to all units.

A report of any escape shall be made as a supplement to the original 1.1 report and forwarded through the chain of command.

The Internal Affairs Division will be immediately notified of any escape.