UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BROWNWYN FORD, KATRINA MACK, et al., on behalf of themselves and on behalf of others similarly situated, Plaintiffs<br><br>v.<br><br>SUFFOLK COUNTY, RICHARD J. ROUSE in his individual capacity, JANE DOE, in her individual capacity, and the CITY OF BOSTON, Defendants | ) ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. 98-11346-NG |

## PLAINTIFFS' REPLY TO SUFFOLK COUNTY AND RICHARD ROUSE'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

### I.    INTRODUCTION

The Suffolk County defendants do not seek summary judgment for women

brought to the Nashua Street Jail ("Jail") after June 25, 1997 and charged with

misdemeanors which do not involve drugs or other contraband or crimes of violence.

Instead, the County claims there are material factual disputes which prevent summary

judgment from entering in favor of these class members.   In this memo, plaintiffs

respond to the issues raised by the County in opposing summary judgment.   All other

issues are in plaintiffs' opposition to the defendants' cross motion.

DOCKETED 123

## II.    ARGUMENT

### A.    Material Facts Are Not in Dispute

The County claims there are five factual disputes that require a trial. As explained below, none of these are material factual disputes.

### 1.    Institutional Security Does Not Support Strip Searches

The County submits an expert affidavit to support its claim that institutional security required strip searches of every person admitted to the Jail.[1] Even if the affidavit is considered, the First Circuit recently ruled that institutional security does not justify suspicionless strip searches.[2] In Roberts, the state chose to put detainees together with convicted prisoners. This did not convince the court to permit strip searches. The Suffolk defendants base their argument on the fact that they put pre-arraignment detainees in the general population of the Jail. However, they admit that since the change in policy, they have held safekeeps without forcing them to mingle with the general population of a maximum security institution. There was no compelling need to strip search the BPD safekeeps.

---

[1] Plaintiffs have filed a motion to strike this affidavit since it violates the discovery rules and F.R.Civ.P. 56(e).

[2] Roberts v. Rhode Island, 239 F.3d 107 (1st Cir. 2001).

2.    <u>Affidavits Submitted by Suffolk County Do Not Contradict</u>
<u>Plaintiffs' Claims Extent of the Contraband Problem</u>

Plaintiffs' statement of undisputed facts alleged that the "County admits that, out

of over seven thousand strip searches, it only has five documented discoveries of

contraband."[3]  The County **does not dispute this**.  Instead, the County attempts to

create a factual dispute by providing vague affidavits alleging there is a serious contraband

problem.  Analysis of the affidavits shows that they are not limited to the relevant criteria

for this case.  The First Circuit noted in <u>Roberts</u> that the issue is whether there is a

serious problem with **"contraband that would not have been discovered without a**

**visual body cavity search."**[4]  The affidavits and depositions do not establish that

additional contraband was found that met the criteria for relevance in this case.

In order to contradict the data presented by the plaintiff, three factors must exist:

(1) the contraband must have been found on a woman who is held pre-arraignment for

the Boston Police Department; (2) the contraband must have been found in a location

where it would not have been found absent a strip and visual body cavity search; and (3)

the contraband must have been found during the class period, from December 10, 1995

to September 1999.  The affidavits submitted by the County do not provide dates,

names of the persons searched, or for most affidavits, where the contraband was found.[5]

---

[3] Plaintiffs' SJ class memo p.17.

[4] <u>Roberts</u>, 239 F.3d 107, 112, n.6.

[5] The affidavits provide unreliable anecdotal accounts. Because the defendants' allegations do
not provide any written reports or other documents, dates on which the contraband was found or

### a.    A Written Report Was Required When Contraband Was Found

The County agrees that reports are to be written when contraband is found. But the County cannot explain why, after two years of searching, it can only locate five relevant reports. Executive Assistant Nate Lincoff who served as Director of the Sheriff's Investigative Division for part of the class period confirms that if contraband were found, policy required that a written report be prepared.[6] These reports would be filed chronologically.[7] Although Mr. Lincoff says he is aware of "many reports" being filed regarding BPD female safekeeps, he does not contradict plaintiffs' claim that there were only five reports of contraband found as a result of a strip or visual body cavity search on a BPD safekeep during the class period.

The County has known for over two years that reports on contraband found as a result of a strip or visual body cavity search on a putative class member during the class period were sought by the plaintiffs. They have only produced five relevant documents. On January 26, 1999, plaintiffs' counsel sent an interrogatory and document request to the County requesting details for each strip or visual body cavity search in which an item

---

names of the women searched, the material is unverifiable. A party cannot avoid summary judgment simply by producing such loosely worded affidavits.

[6] County's SJ Opp. Ex. 13 at ¶5. Capt Casey and Capt Janielis say that reports were written when contraband was found and the reports were turned over to the Sheriff's Investigation Division. County's SJ Opp. Ex. 6 and Ex. 7. Una Keough Martin says she wrote reports on the vast majority of occasion when she found contraband. County's SJ Opp. Ex. 11.

[7] County's SJ Opp. Ex. 13 at ¶8.

4

was found on a female arrestee held for the BPD for 1995 to the present.[8]  The County responded on March 12, 1999 and supplemented the response on April 16, 1999.[9]  By April 16, 1999, the County had provided reports of contraband found on a class member as a result of a strip or visual body cavity search during the class period.[10]  These reports were edited to exclude the names of the women.[11]

On May 12, 2000, the County provided unedited incident reports "relative to strip searches conducted on Boston Police Safekeeps for the period December, 1995 through September 1999."[12]  These five unedited reports were the same five edited reports previously produced.[13]  There were still only five reports that contraband was allegedly found on a BPD safekeep during the class period as a result of a strip or visual body cavity search.[14]  A few days later, counsel for the County indicated "that there are no additional reports of contraband to add to the reports previously submitted to your office"[15]  No additional reports that meets the criteria have been provided since then.[16]

-------------------

[8] HF Aff. at ¶ 1.

[9] HF Aff. at ¶2.

[10] Id.

[11] Id.

[12] HF Aff. at ¶3; HF Aff. Ex. A (letter from Rose King).

[13] Id.

[14] Id.

[15] HF Aff. at ¶5; HF Aff Ex. B.

[16] HF Aff. at ¶¶6 and 7.

The fact that the County's vague undocumented allegations of a serious contraband problem are untrue is shown by the fact that, as explained in plaintiffs' initial summary judgment memorandum, almost all of the reported cases show similar low numbers of contraband found as a result of a strip or visual body cavity search.[17]  Once again in Roberts, the court found that the contraband problem at intake in Rhode Island was not serious enough to require strip and visual body cavity searches.[18]  Suffolk County does not have relevant documents because they do not exist.  Suffolk does not face a contraband problem that is greater than that in any of the reported cases.

### b.    The Affidavits Refer to Many Items Carried by Women Which Were Not Found During a Strip Search

Captain Richard Flynn's affidavit reveals how far the defendants are willing to go to create a factual dispute.  He claims that "contraband" was frequently found.[19]  But, he defines the term contraband to include to items most women might have.  For example he includes: cash, jewelry, a nail clipper, a nail file, cigarette, matches or alcohol in a woman's "possessions" (presumably including her purse) or in her "clothing" as well as in a body cavity.[20]  The fact that a woman who was arrested had a nail file in her purse or cash in her pocket is not relevant to the issues in this case.  Items found in a property bag or in clothing could be discovered without a strip and visual body cavity search.

_____

[17] See, Plaintiffs' SJ class memo at p. 28, n. 37.

[18] Roberts, 239 F.3d at 112.

[19] County's SJ cross motion Ex. 12 at ¶4.

[20] Id. at ¶5.

3.    **Neither a Strip Search Nor a Visual Body Cavity Search Is Needed to Detect the Items Described**

Roberts noted that after an arrest, law enforcement officials "should be able to detect contraband on the person of a detainee without the need for a body cavity inspection."[21]    Plaintiffs do not contest the County's right to require pre-arraignment detainees to pass through a metal detector. If the defendant is interested in locating potential weapons, this would solve the problem. There is no need to strip bare and degrade thousands of women to prevent weapons from entering the Jail.

4.    **The Policy of the Boston Police Department Required a Search of Women Before They Went to the Jail**

The County attempts to contradict the City's admitted policy of searching women at booking by pointing to a few instances out of over eight thousand searches to claim the fact is contradicted. The fact that a few police officers failed to follow the City's policy does not put the existence of the policy in dispute. One class member alleges that she was touched by correctional officers during a strip search.[22]    Surely the County would object if plaintiffs claimed that this meant the County's policy was to touch women during the strip search. The City of Boston has not contested plaintiff's statement of uncontested facts regarding the policy of the BPD to search every woman at booking. The County has not contradicted this fact.

---

[21] Roberts at 111.

[22] Plaintiffs' Ex. 29 at ¶5.

### 5.    The Statistics Are Not Material to Determining Liability

The County claims its statistics regarding the charges brought against class members differs from the statistics presented by the plaintiffs.  Plaintiffs allege there were 8,109 admissions while the County claims there were 7,907.  The defendants do not explain why a difference of 209 admissions is material to the liability issues addressed here.  There is no need to examine this issue here because these statistics are not material facts which must be resolved now in order for this court to decide summary judgment on liability.

The defendants claim that some small number of women were not strip searched because they refused.  This too has no effect on the motion for summary judgment on liability.  During the damages phase of this case, the defendants can present evidence that a particular purported class member does not actually belong in the class.

### B.    As a Matter of Law, the Sheriff Is the Final Policymaker for the Strip Search Policy

Determining whether a public official has final policy making authority is a question of state law.[23]  The Sheriff admits he had final policymaking authority.[24]  The First Circuit has already decided that in Massachusetts, a sheriff is the policymaker for the county with regard to strip search policies.[25]  Defendant Rouse has not created a factual dispute on this legal issue by claiming that he did not actually exercise the policymaking authority he admittedly possessed.

---

[23] St. Louis v. Praprotnik, 485 U.S. 107 (1988).

[24] Plaintiffs' Ex. 35 at req. 1; Ex. 2 at 13/13-22.

[25] Blackburn v. Snow, 771 F.2d 556 (1st Cir. 1985).

## III.    CONCLUSION

There are no material factual disputes in this case. This court should enter a summary judgment establishing the liability of the defendants Suffolk County and sheriff Richard Rouse for violation of 42 U.S.C. §1983 to each of the named plaintiffs and to every member of the class they represent.

RESPECTFULLY SUBMITTED,
The plaintiffs, individually and on
behalf of all others similarly situated,
By their attorneys,


Howard Friedman
BBO #180080


Myong J. Joun
BBO #645099
Law Offices of Howard Friedman
90 Canal Street, Fifth floor
Boston, MA 02114-2022
(617) 742-4100