UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 98-11346-NG

BRONWYN FORD, KATRINA MACK, et al., on behalf
of themselves and on behalf of others similarly situated,
        Plaintiffs,

v.

SUFFOLK COUNTY, RICHARD J. ROUSE, in his
individual capacity, JANE DOE, in her individual
capacity, and the CITY OF BOSTON,
        Defendants

---

## DEFENDANT CITY OF BOSTON'S MEMORANDUM REGARDING FOURTH AMENDMENT LIABILITY TO SUB-CLASS II

---

## I.    BACKGROUND

On July 31, 2001, this Court found that Suffolk County ("County") and the City of

Boston ("City") were liable under 42 U.S.C. §1983 for violation of the Fourth Amendment

rights of "plaintiff class members charged with felonies or misdemeanors involving neither

violence or drugs, and class members held on default warrants for similar offenses." Ford v.

City of Boston, et al., 154 F.Supp.2d 131, 134 (D. Mass. 2001). Despite plaintiffs' assertions

to the contrary[1], this Court "reache[d] no decision as to the defendants' Fourth Amendment

---

[1] Plaintiffs allege that the "issues raised here determine only which defendant will pay the damages to Sub-Class II members in this case". Pl. Fourth Am. Mem. at p.1. This presumes liability has been determined against the City to members of Sub-Class II for violation of their Fourth Amendment rights. While this Court has determined that the City is liable to all members of the plaintiff class for equal protection of the law, Ford, 154 F.Supp.2d at 135, this Court has not determined that said damages would be equivalent to those of Sub-Class I. Id. at 151 ("[t]he amount of damages remains to be determined"). Furthermore, as this Court has articulated, "it may well be that women charged with certain violent felonies are not entitled to damages for violations of their Fourth Amendment rights in connection with the Jail searches. Even though the County policies under which these women were searched were unconstitutional, the particular searches may not have been." Ford, 154 F.Supp.2d at 144.

liability for strip-searches of women arrested initially or on default warrants for crimes involving violence or drugs." Id.

Pursuant to this Court's memorandum and order of July 31, 2001, the parties submitted proposed definitions of violent crimes.[2]  The City submits this memorandum pursuant to this Court's request for further briefing on its Fourth Amendment liability to Sub-Class II, and in response to Plaintiffs' Memorandum Regarding The Fourth Amendment Rights Of Sub-Class II Plaintiffs.

## I.   The Searches Of Sub-Class II Plaintiffs Were Constitutional Under The Fourth Amendment, And Therefore The City Should Not Be Held Liable For The Searches[3]

The First Circuit in 2001 stated unequivocally that strip searches are presumptively valid for felonious offenses and that an "individualized suspicion is not necessary to search certain groups of inmates..." Roberts v Rhode Island, 239 F.3d 107, 113 (1st Cir. 2001).[4]

In Roberts, there were four reasons why the strip search policy of the Rhode Island Department of Corrections, which required all males to be subjected to a strip search and visual body cavity search, were unconstitutional.  Rhode Island did not limit its searches:  (1) to prisoners who had contact with outside visitors; (2) to its "most dangerous prisoners"; (3)

---

[2] The City incorporates its submission into this memorandum, and does not repeat its proposed definitions for sake of brevity.

[3] The City maintains that it is an entity separate and distinct from the County, and that it should not be held liable for the County's blanket strip search policies. Montgomery v. Rufo, 1998 WL 151233 *1 (D. Mass. 1998) (dismissing plaintiff's allegations against the City and Commissioner Evans in holding that Suffolk County retains the obligation to provide for operation and maintenance of the jail); Gordon v. Sheriff of Suffolk County, 411 Mass. 238 (1991); Mass. Gen. L. ch. 126, §16.  Further, the City could reasonably assume that the policies at the Nashua Street Jail were constitutional.  Deaton v. Montgomery County, Ohio, 989 F.2d 885 (6th Cir. 1993) (it "seems logical...that one may assume that a governmental entity, housing prisoners, is in compliance with state law" and there is no affirmative duty to discover whether there was in fact compliance with state law).  See also, City's S.J. Opposition, generally.

[4] Throughout their brief, plaintiffs state that the First Circuit requires individualized suspicion for strip searches, yet curiously they cite to no First Circuit case which stands for this proposition, as indeed they cannot. Furthermore, despite plaintiffs' assertions, Swain does not state that individualized suspicion is required for strip searches in the First Circuit.  Pls. Fourth Am. Mem. at p.9, n.38.

2

to those institutions with a lengthy history of contraband problems; or (4) to those prisoners charged with a violent felony (the policy allowed strip searches for prisoners charged with misdemeanors involving minor offenses or traffic violations, crimes not generally associated with weapons or contraband. In <u>Roberts</u>, the plaintiff was arrested for expired registration stickers, which had resulted in a 'body attachment' which had in fact been withdrawn prior to his arrest). <u>Roberts</u>, 239 F.3d at 111-112.

It is thus clear that the First Circuit <u>would</u> permit strip searches of prisoners arrested for violent felonies, without the need for individualized reasonable suspicion. "Reasonable suspicion may be met simply by the fact that the inmate was charged with a violent felony," <u>Roberts</u>, 239 F.3d at 112, citing <u>Dufrin v. Spreen</u>, 712 F. 2d 1084, 1087 (6th Cir. 1983). The <u>Roberts</u> court concluded that "individualized reasonable suspicion is not necessary to search certain groups of inmates...". <u>Id.</u> at 113. Judge Keeton has most recently followed this decision in <u>Seaver v. Manduco</u>, 178 F. Supp.2d 30, 38 (D. Mass. 2002)("The search must generally be based on a reasonable suspicion that the inmate has contraband (citations omitted). A reasonable suspicion can be inferred without more proof, as where an inmate has met with visitors or has committed a disciplinary infraction,") <u>Id</u> . As so stated in the <u>Roberts</u> decision, one of these "certain groups of inmates" are prisoners charged with "violent" felonies. <u>Roberts</u>, 239 F.3d at 113.

Despite plaintiffs' assertions to the contrary, the <u>Roberts</u> case did in fact distinguish between violent felonies and "misdemeanor[s] involving minor offenses or traffic violations, crimes not generally associated with weapons or contraband", which the court found required reasonable suspicion. <u>Id</u>. at 112. The <u>Roberts</u> court did not mandate a reasonable suspicion standard for violent misdemeanors, nor should this Court. This Court has not distinguished

violent felons from violent misdemeanants for purposes of Sub-Class II. Ford, 154

F.Supp.2d 131, 145 (defining Sub-Class II as "the remaining class members, who were

searched after arrests for offenses – either misdemeanors or felonies – involving drugs or

'violence'). [5]

Although plaintiffs argue to this Court that the decision of Swain v. Spinney stands

for the proposition that individualized reasonable suspicion is the standard in the First

Circuit, this is not the case. Pl. Fourth Am. Mem. at p.9. The Swain decision is thus not at

odds with Roberts. In Swain, the court found the particular strip search unreasonable on the

facts of the case, based upon the outrageous facts of the search, especially considering the

fact that there existed an inference that the search was conducted in a punitive and retaliatory

manner because the plaintiff refused to cooperate with the defendants' interrogation. The

Swain court stated three reasons why the search failed:  (1) the timing of the search (the

plaintiff was in a cell, alone, for approximately twenty minutes and significantly she was

allowed to privately use the bathroom; thus, if she had any weapons or contraband in her

possession, the evidence was destroyed at the time of the strip search); (2) there was no

institutional security justification (she was alone in the holding cell and there was no risk of

her coming into contact with other prisoners or to smuggle contraband or weapons into a

secure environment); (3) her differential treatment (she was strip searched, while her

---

[5] The term "violence" in this Court's decision refers to both misdemeanors and felonies. Ford, 154 F.Supp.2d at 145. The quotations surrounding the word violence refer simply to the use of the word "violence" in footnote 29 wherein it is explained that "violence" is in quotes due to the uncertainty of its definition. Further, this Court states that "[i]t therefore seems plausible—albeit barely—that Jail officials could constitutionally have followed a policy of searching arrestees charged with certain crimes, namely those involving weapons or drugs, on the theory that perpetrators of such crimes are marginally more likely to be hiding weapons or drugs on their person at the time of the arrest". Id. at 146. There is no delineation between misdemeanor or felony as to the "certain crimes, namely those involving weapons or drugs". Id. Plaintiffs' interpretation of the use of the word violence is disingenuous. Although plaintiffs further support their proposed definition of violence by referring to the fact that class members Buckly and Dailey were charged with misdemeanors and not put into Sub-Class II, this information was not before this Court, and is exactly what this Court has requested – that the parties further brief the issue so that this Court may determine which class members are in which sub-class. Id. at 145.

4

boyfriend who had a known criminal record and history was not). These factors obliterated any hope of reasonableness of the search. Swain, 117 F.3d at 8-9.

Unlike Swain, in this case the Sub-Class II plaintiffs were not alone. They were intermingled and had a risk of contact not only with each other, but with other prisoners in general population as well. Furthermore, they were arrested on charges for which it would be reasonable to associate contraband or weapons. Finally, the search at the Jail was not punitive or retaliatory. So, while the Roberts court was "unconvinced by institutional security concerns in Swain, because the arrestee there was held in a local jail and posed 'no risk' of contact with other prisoners", Roberts, 239 F.3d at 111, such was not the case here. The plaintiffs were brought into the Jail, placed within contact of each other and the other convicted prisoners already admitted to the Jail, and arrested on charges related to drugs and/or violence.

Swain also held that the right to be free from unreasonable searches has long been established in the First Circuit, and that reasonable suspicion that the arrestee is concealing contraband or weapons is the appropriate standard for justifying strip searches. Swain, 117 F.3d at 7. The parties in the instant case do not disagree that this is the standard as it pertains to non-violent misdemeanors. As the First Circuit concluded in Roberts, the Swain holding applies to the context of "prisoners held in local jails for minor offenses". Roberts, 239 F.3d at 110. In those situations, reasonable suspicion that a particular detainee is concealing contraband or weapons is the standard to be met prior to conducting a strip or visual body cavity search. However, in the case of the Sub-Class II plaintiffs here, they were not arrested for minor offenses alone. The plaintiffs were arrested for crimes involving weapons, drugs and/or violence, and the standard as to the Fourth Amendment reasonableness of their search

is different. It is here that the parties diverge as to what factors are required to qualify as reasonable suspicion.

The City is in accord with the First Circuit's decision in <u>Roberts</u> that the standard of reasonable suspicion is met when the prisoner is charged with a violent felony. <u>Roberts</u>, 239 F.3d at 112. By analogy, the <u>Roberts</u> decision would extend to all charges involving violence or drugs, whether misdemeanors or felonies. As this Court has stated, "the object of this endeavor is to separate offenses that inherently generate suspicion the offender may be concealing weapons or contraband, from offenses that generate no such suspicion." <u>Ford</u>, 154 F.Supp.2d at 145 n.29. Drawing a distinction by label - felonies or misdemeanors - when both could generate a suspicion the arrestee may be concealing weapons or contraband is counterproductive.

The touchstone of the Fourth Amendment analysis is an objective standard by which the court is able to measure whether the strip search is reasonable. "The <u>Bell</u> balancing test for reasonableness requires at a minimum that the facts upon which an intrusion is based be capable of measurement against an objective standard...". <u>Wilson v. Jones</u>, 251 F.3d 1340, 1342 (11th Cir. 2001), citing <u>Justice v City of Peachtree</u>, 961 F.2d 188, 192 (11th Cir. 1992)(citations omitted). This objective standard is met by allowing searches based upon certain types of crimes involving contraband and violence. "It is objectively reasonable to conduct a strip search of one charged with a crime of violence before that person comes into contact with other inmates". <u>Masters v. Crouch</u>, 872 F.2d 1248, 1255 (6th Cir. 1989)(finding a strip search for traffic violations to be unreasonable without particular reasonable grounds). This is so because probable cause for the violent or drug-related charge has already been determined by either a police officer or a magistrate. "A police officer's determination of

probable cause to believe that a detainee has already committed a serious crime is sufficient
to raise a reasonable suspicion that the detainee is hiding weapons or contraband, especially
in light of the government's compelling interest in maintaining safety in jail security". Smith
v. Montgomery County, MD, 643 F. Supp. 435 (D. MD. 1986). These cases do not
distinguish violent or drug-related felonies from violent or drug-related misdemeanors, nor
should this Court. As this Court has stated, "[w]hile the felony-misdemeanor distinction
provides a convenient benchmark by which society can estimate the seriousness of the
offense, it offers little information about the likelihood that an individual arrestee is
concealing weapons or contraband." Ford, 154 F.Supp.2d at 143.

The cases that have allowed strip searches as a result of a blanket policy have relied
upon the fact that the crime is one associated with violence, be it a felony or a misdemeanor.
See Dufrin v. Spreen, 712 F.2d 1084, 1089 (6th Cir. 1983)(felonious assault – assaulting
sixteen year old daughter with broom handle is a felony involving violence); Dobrowolskyj
v. Jefferson County, Ky., 823 F.2d 955, 958-959 (6th Cir. 1987)(plaintiff charged with
menacing – "intentionally placing another person in reasonable apprehension of imminent
physical injury" – a misdemeanor offense associated with weapons which "may well raise
reasonable suspicion on the part of the jail officials that a person detained on that charge may
be concealing weapons or other contraband"); Thompson v. City of Los Angeles, 885 F.2d
1439, 1447 (9th Cir. 1989)(plaintiff arrested for grand theft auto – "the reasonableness
determination in this case hinges upon the nature of the grand theft auto offense with which
Thompson is charged...such an offense is sufficiently associated with violence to justify a

visual strip search")[6]. See, *generally*, Gabriel M. Helmer, Note, Strip Search and the Felony Detainee: A Case of Reasonable Suspicion, 81 B.U. L. Rev. 239, 264 (2001).

Several courts that have precluded blanket strip search policies for those arrested on minor offenses have recognized the difference between prisoners arrested on serious charges and charges involving weapons or contraband, and accordingly limited the prohibition of blanket strip searches to non-violent misdemeanors. See Giles v. Ackerman, 746 F.2d 614, 617-618 (9th Cir. 1984)(limiting strip searches to those not charged with minor offenses); Smith v. Montgomery County, MD, 643 F. Supp. 435, 439 (D.Md. 1986)("reasonable suspicion exists to strip search all felony arrestees and all temporary detainees arrested for misdemeanor offenses that involve weapons or contraband. Reasonable suspicion also exists to strip search all temporary detainees with prior records of convictions or unresolved arrests for felony offenses, or for misdemeanors involving weapons or contraband." - plaintiff's strip search was unreasonable for a charge of failure to pay child support); Masters v. Crouch, 872 F.2d 1248, 1255 (6th Cir. 1989)("it is objectively reasonable to conduct a strip search of one charged with a crime of violence before that person comes into contact with other inmates" – plaintiff's strip search for traffic violations mistakenly resulting in an arrest warrant found unconstitutional); Watt v. City of Richardson, 849 F.2d 195, 197-198 (5th Cir. 1988)("Reasonableness under the Fourth Amendment must afford police the right to strip search arrestees whose offenses posed the very threat of violence by weapons or contraband drugs that they must curtail in prisons...limiting the searches generally to those offenders

---

[6] But see Kennedy v. Los Angeles Police Dept., 901 F.2d 702, 716 (9th Cir. 1990) while stating that a blanket strip search policy for all felonies is unconstitutional, "in some cases, the charge itself may give rise to reasonable suspicion", citing Thompson, 885 F.2d 1439, 1447 (9th Cir. 1989); Dufrin, 712 F.2d at 1089; and Watt v. City of Richardson, Police Dept., 849 F.2d 195, 197-198 (5th Cir. 1988). McGill v. Lee County, 990 F. Supp. 1382 (M.D. Ala. 1998)(two plaintiffs, one arrested for driving under the influence and the other for bad check charges, are reasonably strip searched based upon policy reasons).

charged with or having a criminal history of narcotics, shoplifting or weapons charges is not an irrational attempt to foster jail security while restricting the scope of strip searches" - plaintiff's strip search for failure to license a dog is found unconstitutional); Wachtler v. County of Herkimer, 35 F.3d 77, 81 (2nd Cir. 1994)("In the present case we may assume that the crime charged – driving without a license – could not give rise to reasonable suspicion").

Even the plaintiffs' oft-cited Davis v. City of Camden, 657 F. Supp. 396, 400 (D. NJ 1987) recognized, albeit reluctantly, "that a blanket risk approach could only exculpate a defendant who conducted a strip search lacking suspicion that the arrestee is concealing weapons or contraband, when the jail actually has adopted a policy that permits only those persons arrested on felonies or on charges involving weapons or contraband to be searched without individualized suspicion and affirmatively requires individualized suspicion with regard to other arrestees...**a blanket policy covering only persons charged with felonies or with misdemeanors involving weapons or contraband arguably is justifiable because it is based on a reasonable generalization**". (Emphasis added). While in the instant case, there admittedly was no policy delineating the classes of prisoners to be strip-searched, this should be irrelevant to the liability of the City to the Sub-Class II plaintiffs, as it was constitutional for Sub-Class II members to be strip-searched. A search, although not supportable under an institutional policy, is not *per se* unconstitutional. Kennedy, 901 F.2d at 715. The question remains whether there was reasonable suspicion to conduct a strip search. Reasonable suspicion may be premised on the fact that the crimes for which Sub-Class II women were arrested were associated with violence. (Thus the strip search of plaintiff unreasonable in Kennedy where the felony was theft over $400.00, but reasonable in Thompson, 885 F.2d 1439 (9th Cir. 1989) for felony of grand theft auto).

9

The recognition by the courts across the circuits, including the First Circuit, that strip searches may be performed for some categories of crimes without individualized reasonable suspicion, precludes the granting of summary judgment against the City for strip searches of women arrested for committing violent felonies, violent misdemeanors and all drug-related charges, and thus precludes a finding of Fourth Amendment liability against the City for all members of Sub-Class II.

## II.    Definition of Violence

Black's Law Dictionary defines "violence" as "unjust or unwarranted use of force, usu[ally] accompanied by fury, vehemence, or outrage; physical force unlawfully exercised with the intent to harm". Black's Law Dict., 7th Ed. (1999). Under the United States Sentencing Commission, a "crime of violence" is defined as "any federal or state offense punishable by more than a year in prison that (i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (ii) is burglary of a dwelling, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S. v. Fernandez, 940 F.Supp. 387 (D. Mass. 1996) (Young, J.) citing U.S.S.G. §4B1.2(1).

The City opposes the Plaintiffs' definition that would limit the definition of violent offenses as to only those offenses that are "a felony with a weapon that involves planning". Pl. Proposed Def. at p.2; or that it be "limited to violent felonies which by their nature involve both the use of a weapon and planning, while drug offenses should not include those charges for possession of small[7] amounts of marijuana". Pl. Fourth Am. Mem. at p.2. The

---

[7] Plaintiffs offer no guidance on what constitutes a "small amount" of marijuana, nor do they suggest any guidelines. Plaintiffs further do not offer any explanation for distinguishing between marijuana and any other

City proposes that the definition of a "violent offense" include both misdemeanors and felonies that have the use, attempted use, or threatened use of physical force against the person of another; the burglary of a dwelling, arson or extortion, involving the use of explosives; and conduct that presents a serious potential risk of physical injury to another. The City, on August 29, 2001, filed with this Court its proposed definitions of violent offenses, for purposes of Sub-Class II.

### III.    Conclusion

"[T]here is no basis for concluding that pretrial detainees pose any lesser security risk than convicted inmates. Indeed, it may be that in certain circumstances, they present a greater risk to jail security and order". <u>Bell v Wolfish</u>, 441 U.S. 520, 546, n.28 (1979). While this Court has concluded that the Jail's blanket strip search policy was unconstitutional, the searches of Sub-Class II plaintiffs were not.

*Wherefore*, the City respectfully requests this Honorable Court deny summary judgment against the City for all members of Sub-Class II.

---

type of drug the arrestees possessed at the time of their arrest. This further supports the City's proposed definition of women in Sub-Class II to include women arrested for a drug offense, regardless of the amount of the drug they possessed at the time of their arrest.

11

Respectfully submitted,
DEFENDANT, CITY OF BOSTON,
Merita A. Hopkins
Corporation Counsel
By its attorneys,


_Susan M. Weise_
Susan M. Weise – BBO# 545455
Chief of Litigation
City of Boston Law Department
Room 615, City Hall
Boston, Massachusetts 02201
(617) 635-4040

_Eve Piemonte Stacy_
Eve A. Piemonte Stacey - BBO# 628883
Assistant Corporation Counsel
City of Boston Law Department
Room 615, City Hall
Boston, Massachusetts 02201
(617) 635-4066


Dated: February 7, 2002