UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| BROWNWYN FORD, KATRINA MACK, et al., on behalf of themselves and on behalf of others similarly situated, Plaintiffs<br><br>v.<br><br>SUFFOLK COUNTY, RICHARD J. ROUSE in his individual capacity, JANE DOE, in her individual capacity, and the CITY OF BOSTON, Defendants | Civil Action No. 98-11346-NG |

## PLAINTIFFS' OPPOSITION TO SUFFOLK COUNTY'S SECOND MOTION FOR SUMMARY JUDGMENT AND REPLY TO THE CITY OF BOSTON'S MEMORANDUM REGARDING SUB-CLASS II PLAINTIFFS

I.   **INTRODUCTION**

Plaintiffs file this brief opposition to defendant Suffolk County's memorandum in support of their cross motions for summary judgment and reply to defendant City of Boston's memorandum regarding the defendants' liability to members of Sub-Class II.[1]

---

[1] Suffolk County defendant describes its memorandum as a Memorandum in Support of Their Cross Motions for Summary Judgment as to Sub-Class II. Suffolk County re-litigates the issues that have already been decided by this Court, arguing that all detainees should be strip-searched, even attaching another affidavit from William P. Sturgeon supporting this view even though it is unconstitutional.

The City also re-litigates an issue that has already been decided by this Court. The City argues that "it should not be held liable [to Sub-Class II plaintiffs] for the County's blanket strip search policies." City's reply at p. 2, n.3. However, this Court has already decided that "there can be no question that the City's liability in damages for Jail violations of BPD arrestees' Fourth Amendment rights is coextensive with that of the County." Ford v. Suffolk County, 154 F. Supp. 2d 131, 150 (D.Mass. 2001).

138

## II. ARGUMENT

### A. Sub-Class II Members are Entitled to Damages from the City Because of the Court's Equal Protection Ruling Regardless of the Fourth Amendment Findings

Plaintiffs and the City of Boston disagree on the damages that flow from the violation of the equal protection rights of Sub-Class II members. Because this issue may influence settlement discussions, plaintiffs ask the Court to rule on this issue while also determining other issues regarding Sub-Class II. The harm caused by the equal protection violation was subjecting women to degrading strip-searches at the Jail. Therefore, the damages flowing from the equal protection violation are the same as the damages caused by the Fourth Amendment violation.

This Court found that the City's policy "resulted in a significant gender disparity in the treatment of BPD arrestees. Both male and female arrestees were searched incident to booking, but only female arrestees are routinely subjected to degrading strip and visual body cavity searches thereafter."[2] The plaintiffs in Sub-Class II were strip-searched at the Jail *because* they were women. Because the harm caused by the gender disparity was that women were strip-searched when men were not, the City of Boston is liable to the plaintiffs in Sub-Class II for harm caused by the strip-searches regardless of this Court's ruling on the Fourth Amendment rights of women charged with crimes involving drugs or violence.

---

[2] Ford v. Suffolk County, 154 F. Supp. 2d at 151.

2

A party only needs to succeed on one theory of liability to win damages when several theories of liability are "alternate ways of reaching [the same] result."[3] When there are several theories of recovery for the same harm, "the amount of compensatory damages properly awardable does not depend on the number of theories under which plaintiff may recover, but on the extent of his injury."[4] The injury caused to the Sub-Class II plaintiffs by the strip-search at the Jail is the harm caused by the violation of equal protection. Therefore, the City of Boston is liable for damages caused by the strip-search at the Jail for Sub-Class II plaintiffs regardless of this court's determination on the treatment of class members charged with crimes involving drugs or violence under the Fourth Amendment.

### B. The Defendants Misread Swain

The defendants attempt to distinguish Swain by arguing that Swain is limited to the "outrageous facts" of that case.[5] But the facts in this class action are similar to those in Swain. The First Circuit considered the fact that Ms. Swain was held for twenty minutes before the search to weigh against the constitutionality of the strip-search. Plaintiffs here were held in police custody even longer - for an average of *five hours* - before they were booked and searched at the Jail.[6] Ms. Swain was strip-searched while her boyfriend was not strip-searched. Here, only BPD female safekeeps were strip-

---

[3] Lewis v. Kendrick, 944 F.2d 949, 954 (1st Cir. 1991).

[4] Clark v. Taylor, 710 F.2d 4, 8 (1st Cir. 1983).

[5] City's memo at p. 4, County's memo at pp. 13-14.

[6] See plaintiffs SJ memo at p. 11.

3

searched while BPD male safekeeps arrested for the same offenses were not. Both this Court and the First Circuit have held that it was irrelevant whether the strip-searches occurred in police stations or in jails.[7]

The County argues the Sub-Class II plaintiffs are more like the "dangerous inmates" in Bell or Arruda.[8] Certainly, the defendants cannot claim that a woman charged with domestic assault and battery for slapping her niece or a woman charged with assault and battery with a dangerous weapon for kicking someone are among the "most dangerous inmates" for whom strip-searches can be justified without evaluating for cause. One additional factor makes the strip-searches in this case even more outrageous than in Swain: many of the plaintiffs had already been strip-searched during booking at a Boston police station. Class members had been evaluated for search at the police station and, if reasonable suspicion to strip-search existed, then the woman would have been strip-searched at the police station. Transporting a woman for lodging purposes should not automatically subject her to a strip-search simply based on the category of crime charged.

In Seaver v. Manduco,[9] Judge Keeton recently reviewed Swain in a case involving a convicted prisoner who was strip-searched after the authorities believed that there was a fight in the cell block. His opinion cites Swain for the proposition that "courts must

---

[7] Ford v. Suffolk County, 154 F.Supp.2d at 140; Roberts v. Rhode Island, 239 F.3d 107, 111 (1st Cir. 2001).

[8] Bell v. Wolfish, 441 U.S. 520 (1979); Arruda v. Fair, 710 F. 2d 886 (1st Cir. 1983).

[9] 178 F.3d 30, 38 (D.Mass. 2002).

carefully consider the circumstances associated with this type of search [a strip-search]."[10] Seaver also interpreted Roberts as holding that reasonable suspicion may be inferred when an inmate has met with a visitor or has committed a disciplinary infraction.[11] "[T]he focus of the justification inquiry is on finding contraband."[12] As explained next, Boston safekeeps rarely had hidden contraband which required a strip-search.

### C. The County's Documents Support the Plaintiffs' Claims

#### 1. The Documents Indicate that Strip-searches Yield Almost No Contraband

Just as it did in its initial motion for summary judgment, Suffolk County has attached vague affidavits of Jail officials who claim that contraband is a major problem that justifies blanket strip-searches. This is not sufficient to raise an issue of material fact. Although documents are required to be prepared when contraband is found, the County lacks documentation that drugs or weapons were found in body cavities.[13]

The County attached documents but did not provide an affidavit explaining how these documents were located or describing the time period searched. The documents go back to July 20, 1992 and forward to February 20, 2000. Plaintiffs assume the County searched for any records they could find going back to March, 1991 when the

---

[10] Id.

[11] Id.

[12] Id.

[13] The County has attached as exhibits Incident Reports, Disciplinary Reports and Evidence and Chain of Custody forms which show that Suffolk County had policies and procedures to document all contraband found. If the County retained a photograph of an eyeliner bottle found in 1992, County's Ex. 1B, it is incredible to believe that it did not keep records of drugs and weapons found on safekeeps.

Jail began taking safekeeps. These documents show that Jail officials rarely found contraband, not only as a result of a strip-search, but also as a result of other types of searches.[14]

Review of the documents shows that before the class period, it was highly unlikely that a safekeep would have hidden contraband that could only be found by a strip-search. The County provided documents regarding four incidents outside the class period where contraband was found as a result of a strip-search.[15] Since the additional period was longer than the class period, it was highly unlikely that a strip search would reveal anything before the class period began.

The County has provided documents on fifteen incidents in which items were found as the result of a search other than a strip-search.[16] Of the fifteen incidents, six times the item was found in the woman's property, eight times the item was found in her clothing and once the item was found in a woman's mouth. These documents show that a strip-search is not needed to find contraband.[17]

---

[14] Exhibits 1 A-J concern items found during a strip-search; exhibits 7 A-O are of items found during other types of searches.

[15] Although there are ten letters, exhibits 1C and 1D concern the same incident. Five of the incidents were within the class period, four incidents were outside the class period.

[16] One of these exhibits, 7C, was for a woman who was not a Boston safekeep since she was brought to the Jail by the Revere Police Department. Apparently, the County searched for documentation for contraband found on any safekeep, not just BPD safekeeps.

[17] This Court stated that "If the presence of such small penknives in an arrestee's handbag, without more, were sufficient to create 'reasonable suspicion' that the arrestee was harboring weapons or contraband, that jurisprudential standard would afford little protection. Almost every woman carries some small sharp objects in her handbag -- nailfiles, keys, ballpoint pens, safety pins. I do not dispute the Jail officials' right and obligation to confiscate the knives, but I cannot accept that their mere presence in Ford's handbag justified her strip and visual body cavity search." Ford v. City of Boston, 154 F. Supp. 2d 123, 129, n.6 (D.Mass. 2001).

2. **There Is No Relationship Between the Crime Charged and Smuggling Contraband**

In Roberts, the Court of Appeals closely examined the defendants' claim that strip-searches were necessary because there was a serious contraband problem and found that body cavity searches without cause were not needed for pre-trial detainees.[18] As defendants argue, some courts have assumed that people arrested for violent felonies or drug offenses are more likely to have hidden contraband. However, there is no need to base a ruling on false assumptions that other courts have used to support reasonable suspicion.[19] The assumption that certain classes of crimes make it more likely that a person might have hidden contraband can be tested against reality.[20] The County's own data establishes that they rarely found contraband on a class member. There were only five documented discoveries as a result of a strip-search during the class period - nothing was found during a strip-search of a woman charged with a violent crime.[21]

---

[18] Roberts v. Rhode Island, 239 F.2d at 113 ("a close examination ... indicates that a body cavity search was entirely unnecessary to discover the contraband.").

[19] Courts have held that women charged with violent misdemeanors may not be strip-searched without cause. Martinez v. Tully, 1994 U.S.Dist.Lexis 20935 (E.D.CA 1994)(charges including incitement to riot, assault with a deadly weapon [egg], resisting arrest, riot and attempted riot); Bovey v. City of Lafayette, 586 F.Supp. 1460 (N.D.Ind. 1984)(arrest for assault and battery on a policeman, resisting law enforcement, speeding and disorderly conduct); Davis v. City of Camden, 657 F.Supp. 396 (D.N.J. 1987) (arrest on warrants for assault and battery charging plaintiff with cutting complainant with knife in addition to motor vehicle violations and parking tickets); Simenc v. Sheriff of Du Page County, 1985 U.S.Dist. LEXIS 12898 (N.D. Ill. 1987)(plaintiff charged with obstructing a police officer and two counts of battery).

[20] The fact that contraband was found so rarely in this case shows that any broad-based assumption that suspicion to strip-search exists for a class of offender is likely to be faulty. No matter what the offense, it is highly unlikely that a woman in the status of the class members would have hidden contraband that would only be revealed through a strip-search.

[21] While the County argues by anecdotal affidavits that more contraband was found but not logged, the statistics appear to be accurate because they are similar to the statistics in other strip-search

Most telling is the fact that the County does not argue, based on its documents, that there is a relationship between crimes of violence or drugs and smuggling contraband. The County presents the view, which this Court has rejected, that a reasonable suspicion exists to strip-search every detainee.

The documents do not support a claim that there is a reason to suspect that people charged with "violent" or drug offenses have contraband hidden in their body cavities. Of the five documented discoveries of contraband as a result of a strip-search during the class period, none were discovered from a woman charged with a crime of violence.[22] Women were booked on drug charges at the Jail 1,953 times during the class period, and only two times was contraband discovered as a result of a strip-search.[23] This is 1/10th of one percent of the time where strip-searches of women charged with drug offenses produced any contraband - still a very small percentage of women charged with such an offense.[24]

---

cases. See, Roberts; Shain v. Ellison, 53 F.Supp.2d. 564, 567 (E.D.N.Y. 1999), aff'd 273 F.3d 56 (2nd Cir. 2001)(Approximately 14,000 inmates processed for admission to the jail per year. "...in the past two years there have been six occasions when an inmate was found to have various weapons during a strip-search and eight occasions when the initial strip-search revealed concealed drugs."); Giles v. Ackerman, 746 F.2d 614 (9th Cir. 1984)(Of 3,500 persons searched in 18 months only 11 persons had concealed anything that warranted a report, including hiding cigarettes); John Does 1-100 v. Boyd 613 F. Supp. 1514 (D. Minn.1985)(With 1,900 to 2,500 persons booked at the jail each year, there were 13 incident reports in which an item was found in a strip-search in 11 years.).

[22] Ex. 1 at ¶2 (Affidavit of Howard Friedman).

[23] Pl's memo regarding the Fourth Amendment rights of Sub-Class II Ex. 1 at ¶8 (Affidavit of Myong J. Joun); Ex. 1 at ¶3 (Affidavit of Howard Friedman).

[24] Women arrested on disorderly conduct charges were as likely to be hiding contraband in their body cavities as women arrested on drug crimes. Of the five documented discoveries of contraband, two women were arrested for disorderly conduct. Ex. 1 at ¶3 (Affidavit of Howard Friedman).

D.   **State Statutes Do Not Establish Constitutional Standards**

The County attaches state statutes on the subject of strip-searches to its memorandum, apparently to establish that the constitutional standard only prohibits routine strip-searches for minor offenses.[25] However, a state law does not limit a person's rights under the Constitution.[26] The state statutes do not set out a standard for when strip-searches are constitutional; instead, they proscribe strip-searches for minor offenders. The fact that many states by statute prohibit strip-searches for minor offenses does not make it constitutional to strip-search women arrested for crimes involving violence or drugs.

---

[25] County's exhibits 6 A-K.

[26] Ernst v. Borough of Fort Lee, 739 F. Supp. 220, 225 n.7 (D.N.J. 1990).

## III. CONCLUSION

Categorizing a crime as one of violence or drug related does not provide a reasonable suspicion to justify a strip-search.

RESPECTFULLY SUBMITTED,
The plaintiffs,
By their attorneys,

_/s/ Howard Friedman_
Howard Friedman
BBO #180080

_/s/ Myong J. Joun_
Myong J. Joun
BBO #645099
Law Offices of Howard Friedman
90 Canal Street, Fifth floor
Boston, MA 02114-2022
(617) 742-4100

**CERTIFICATE OF SERVICE**

I certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail / ~~by hand~~.

Date: 2/27/02   _/s/ Myong Joun_

# EXHIBIT

# 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BROWNWYN FORD, KATRINA MACK, et al., on behalf of themselves and on behalf of others similarly situated, Plaintiffs<br><br>v.<br><br>SUFFOLK COUNTY, RICHARD J. ROUSE in his individual capacity, JANE DOE, in her individual capacity, and the CITY OF BOSTON, Defendants | Civil Action No. 98-11346-NG |

### AFFIDAVIT OF HOWARD FRIEDMAN

I, Howard Friedman, on oath depose and say the following:

1. To date, Suffolk County has provided documents showing only five incidents in which contraband was allegedly found on a Boston safekeep during the class period as a result of a strip or visual body cavity search.

2. Based on my review of these documents, I found that none of the women in these five incidents were charged with a crime of violence.

3. One woman was arrested on a sex for fee offense, one for possession of class A, two for disorderly and one for miscellaneous other drug offense.

Signed under the pains and penalties of perjury this 27th day of February, 2002,

_/s/ Howard Friedman_
Howard Friedman