UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BROWNWYN FORD, KATRINA<br>MACK, et al., on behalf of themselves<br>and on behalf of others similarly situated,<br>　　Plaintiffs<br><br>　　　　　v.<br><br>SUFFOLK COUNTY, RICHARD J.<br>ROUSE in his individual capacity,<br>JANE DOE, in her individual capacity,<br>and the CITY OF BOSTON,<br>　　Defendants | Civil Action No. 98-11346-NG |

## JOINT PRETRIAL MEMORANDUM FOR DAMAGES TRIALS

### INTRODUCTION

In July 2001, this court established the defendants' liability in a summary judgment ruling. This court scheduled representative damages trials to be heard in June 2002.[1] These jury trials will determine the amount of damages to compensate the five individual plaintiffs for violation of their constitutional rights. Two of the plaintiffs, Katrina Mack and Joanne Maniscalco, are class representatives. The three other plaintiffs are class members. The parties are submitting this pretrial memorandum for the five separate damages trials of class members scheduled.

---

[1] The court suggested six trials. However, due to delay in selecting representative plaintiffs, only five class cases are ready for trial along with the opt-out class member Bronwyn Ford. Because Ford opted out of the class action, the defendants and Ms. Ford's counsel will file a separate pretrial memorandum in that case.

1

## I.    TRIAL COUNSEL CONTACT INFORMATION

### A.    Counsel For Class Representatives Katrina Mack and Joanne Maniscalco, and Class Members Filene Cutter and Mary Ann Ramos

Howard Friedman, Esq.
Myong J. Joun, Esq.
Law Offices of Howard Friedman
90 Canal Street, 5th Floor
Boston, MA 02114
(617) 742-4100

### B.    Counsel for Class Member Marie Hudson

Patricia Garin, Esq.
Stern, Shapiro, Weissberg and Garin
90 Canal Street, 5th Floor
Boston, MA 02114
(617) 742-5800

### C.    Counsel for Defendant City of Boston

Eve Piemonte Stacey, Esq.
Susan Weise, Esq.
City of Boston Law Department
One City Hall Plaza, Room 615
Boston, MA 02201
(617) 635-3199

### D.    Counsel for Defendant Suffolk County

Rose King, Esq.
Kathleen Cawley, Esq.
Suffolk County Sheriff's Department
200 Nashua Street
Boston, MA 02114
(617) 635-1100

## II.    JURY TRIAL

The case will be tried with a jury.

## III.    CONCISE SUMMARY OF THE POSITIONS

### A.    The Plaintiffs' Position

#### 1. Liability

In July 2001, this court established the defendants' liability in a summary judgment ruling. This court determined that the City and the County are liable in damages for violation of the Fourth Amendment rights of all women in Sub-Class I and that the City is liable in damages for violation of the equal protection rights of all plaintiffs, both Sub-Class I and Sub-Class II. The plaintiffs in the damages trials are Sub-Class I plaintiffs.

#### 2. Damages

The plaintiffs suffered emotional damage as a result of the strip searches and visual body cavity searches. Each woman will present evidence at her trial of the effect of the search on her. Each of these women felt violated, humiliated, degraded, shocked, and robbed of their dignity. Some of the plaintiffs suffered from depression, anxiety and insomnia.

### B.    The Defendants' Position

#### 1. Liability

The City agrees with plaintiffs' statement that in July 2001 this court established liability in a summary judgment ruling. The City and County are liable in damages for violation of the Fourth Amendment rights of all women in Sub-Class I and the City is liable in damages for violation of the equal protection rights of all plaintiffs, both Sub-Class I and Sub-Class II. The County adopts the City's statement.

3

The City contests its liability to the plaintiffs in Sub-Class II for the search conducted at the jail.

### 2. Damages

The City and the County contest the nature and extent of the damages claimed by the plaintiffs.

## IV.  FACTS ESTABLISHED BY PLEADINGS, ADMISSIONS, STIPULATIONS OR COURT ORDER

A.  In July 2001, this court established the defendants' liability in a summary judgment ruling.

B.  The County and the City are liable in damages to members of Sub-Class I for violation of the plaintiff's Fourth Amendment rights.

C.  The City of Boston is liable in damages for violation of the equal protection rights of the plaintiff.

D.  The plaintiff was arrested by a Boston Police officer.

E.  Because the City of Boston did not hold women at its police stations each plaintiff was taken to the Nashua Street Jail.

F.  A female correctional officer took the plaintiff to a room and ordered her to remove all of her clothing.

G.  The correctional officer then visually examined the plaintiff's nude body.

H.  The correctional officer ordered the plaintiff to bend over and spread her buttocks to expose her anus and vagina for viewing by the officer.

I.  Because male arrestees were not transferred to the Nashua Street Jail, male arrestees remained in a lock-up cell at a Boston police station and they were not subjected to a strip search and visual body cavity search at the Jail without a determination of probable cause.

V.    **CONTESTED ISSUES OF FACT**

   A.    What harm did the plaintiff suffer as a result of the strip and visual body cavity search?

VI.    **JURISDICTIONAL QUESTIONS**

There are no jurisdictional issues.

VII.    **ISSUES OF LAW**

   A.    **Motions in Limine**

      1.    **Plaintiffs' Crimes**

Plaintiffs plan to file a motion in limine to preclude the defendants from introducing any evidence of their past criminal records, if any. Introducing evidence of the crime charged or prior arrests is irrelevant and prejudicial. F.R.E. 401, 403 and 609.

The City intends to file a motion to allow it to introduce evidence of specific crimes charged and past criminal records, as the information is relevant to plaintiffs' claims of emotional distress. The City will brief its position in its motion.

      2.    **City of Boston's expert witness**

The plaintiffs will file a motion in limine to preclude the City from calling Dr. Martin Kelley as a witness at the damages trials. Dr. Kelley was first identified to the plaintiffs by the City on May 17, 2002. The City has not provided plaintiffs with an expert report. Dr. Kelley has not examined any of the plaintiffs, therefore Dr. Kelley's testimony will not be relevant to any of the plaintiffs' claims. Plaintiffs will more fully brief their position in their motion.

### 3.    Suffolk County Defendants' witness

Plaintiffs plan to file a motion in limine to preclude the County from calling correctional officer Dale Dupree as a witness in the damages trials.  Since the County admits that it cannot identify which correctional officers conducted strip searches for particular class members, and since the trials in June will only be on the issue of damages, officer Dupree's testimony is irrelevant.  Plaintiffs will more fully brief their position in their motion.

### 4.    Cumulative Evidence

The County intends to file a motion in limine to limit the introduction of cumulative evidence.  The County will fully brief its position in its motion.

### B.    Deadlines

It is respectfully requested that the Court provide (1) a deadline on or before which the parties are to file their motions in limine, objections to proposed witnesses and exhibits, and proposed voir dire questions; and (2) a deadline on or before which the parties are to file their oppositions to motions in limine, responses to objections to proposed witnesses and exhibits, and jury instructions.

## VIII.   REQUESTED AMENDMENTS TO THE PLEADINGS

There are no requested amendments to the pleadings.

## IX.    ADDITIONAL MATTERS TO AID IN DISPOSITION OF THIS ACTION

### A.    Plaintiffs' Proposed Order of Damages Trials

This memorandum covers five separate damages trials.  The plaintiffs propose trying the cases in the following order:

1.    <u>Katrina Mack</u> - Jury selection on June 3, 2002.

2.    <u>Joanne Maniscalco</u> - Jury selection on June 3, 2002.

3.    <u>Filene Cutter</u> - Jury selection on June 10, 2002.

4.    <u>Marie Hudson</u> - Jury selection on June 10, 2002.

5.    <u>Mary Ann Ramos</u> - Jury selection on June 17, 2002.[2]

Ms. Mack's case should be heard first because she will be unavailable at the end of June. Also, her mother and step-father will be coming from Arizona to testify regarding Ms. Mack's damages. If Ms. Mack's case goes first, it will be easier for her witnesses to make travel plans.

### B.    City of Boston's Motion to Continue the Damages Trials

#### 1.    The Defendant City of Boston's position

The City intends to file a motion to continue the damage trials in June. As reasons therefore, the depositions of the newly named plaintiffs designated for damages trials were canceled and not rescheduled, due to the parties' participation in mediation with Judge Mazzone. These mediation efforts are continuing. Finally, recent automatic disclosure on the newly named plaintiffs has disclosed witnesses, both factual and medical, whose information should be discovered prior to trial. Therefore, the City will seek to continue the trials so that mediation can continue, and so that discovery can be conducted prior to trial of these actions.

---

[2] A jury for the opt-out plaintiff Bronwyn Ford could also be selected on June 17 with that trial to follow Ms. Ramos.

## 2.    The Plaintiffs' position

Plaintiffs oppose the City's motion to continue the scheduled damages trials in June. At the first mediation session on April 26, 2002, counsel for the defendants suggested that the scheduled depositions of the five plaintiffs designated for damages trials be postponed. Counsel for the plaintiffs expressed reservations and explained that the decision would be entirely up to the defendants but the plaintiffs opposed any delay of the scheduled trials in June. The defendants cannot cancel the depositions, then seek delay because they decided to postpone the depositions.

This case has been pending since December 10, 1998. The defendants have tried to delay this case at every stage. The defendants petitioned for interlocutory review after the Court certified this case as a class action. The defendants filed a motion to stay proceedings pending their appeal of the Court's class certification. When this Court denied the motion to stay, the defendants appealed that to the First Circuit. The defendants also filed a motion to recuse the trial judge. When that was denied, the defendants appealed that as well.

At the January 29, 2002 status conference, counsel for the County requested that the Court continue the damages trials in June. The Court denied the request. Even though the defendants were on notice since January 2002 that the Court would not continue these trials, two weeks before the damages trials are set to begin, the defendants once again seek delay. These damages trials have been scheduled since November 1, 2001. The Court reserved the month of June 2002 specifically for these trials. Delay will

prejudice the plaintiffs. Plaintiffs are willing to continue with mediation efforts at the same time that the parties prepare for the damages trials.

The defendants caused delay in selecting and conducting discovery of the designated plaintiffs for the damages trials. At the November 1, 2001 status conference, the parties agreed to try six plaintiffs' damages trials - three plaintiffs selected by the plaintiffs and three selected by the defendants. The next day, on November 2, 2001, plaintiffs' counsel sent a list of 1,055 contacted class members to defendants' counsel so that defendants' counsel could select three plaintiffs the defendants would like to try damages for. On November 2, 2001, plaintiffs designated Katrina Mack, Joanne Maniscalco and one other plaintiff to be designated shortly thereafter. Plaintiffs' counsel requested that the defendants select their three plaintiffs by November 30.

On November 14, 2001, counsel for the County suggested that the parties work together to pick the six representative plaintiffs for the June trials. In response, on November 27, 2001, plaintiffs' counsel proposed that the parties agree to pick the six plaintiffs from six distinct categories based on criminal offense, if the parties believed this would help to settle the case. Again, plaintiffs' counsel urged the defendants to reach agreement on selecting the six plaintiffs soon in order to conduct discovery before the trials in June.

On January 25, 2002, in addition to Katrina Mack and Joanne Maniscalso who were already selected, plaintiffs' counsel designated Marie Hudson. Plaintiffs' counsel picked four other representatives. Plaintiffs' counsel suggested that the parties work quickly to complete discovery.

The defendants changed their minds again. After the status conference on January 29, 2002, counsel for the County wrote on January 30 that she preferred to have each side pick three plaintiffs; she identified three plaintiffs whom she had selected. On February 5, because the three plaintiffs selected by the County were in Sub-Class II, plaintiffs' counsel suggested that the defendants provide a list of plaintiffs who are in Sub-Class I and expressed disappointment with the defendants taking so long to select plaintiffs. Plaintiffs' counsel informed the defendants that plaintiffs were prepared to go forward with their picks Katrina Mack, Joanne Maniscalco and Marie Hudson.

On February 6, 2002, the County provided a list of ten plaintiffs in Sub-Class I. Less than a week later, on February 11, plaintiffs' counsel informed the defendants that Filene Cutter, Mary Ramos and two others were willing to testify at a damages trial and suggested that since all four plaintiffs may not ultimately be willing to participate, the defendants should prepare discovery for all four. On March 11, 2002, plaintiffs' counsel provided automatic disclosures of the five plaintiffs - Katrina Mack, Joanne Maniscalco, Marie Hudson, Filene Cutter and Mary Ramos, identifying all of their witnesses. On April 9, 2002, plaintiffs' counsel provided responses to the County's request for production of documents for Filene Cutter, Joanne Maniscalco and Mary Ramos.

The defendants have had the opportunity to depose Joanne Maniscalco since November 2, 2001, Marie Hudson since January 25, 2002, and Filene Cutter and Mary Ramos since February 11, 2002. Katrina Mack was already deposed on June 11, 1999.

10

C.    The County's Motion to Limit the Number of Damages Trials

1.    The Suffolk County Defendants' position

The County intends to file a motion to limit the number of damages trials to two. As reasons therefore, the County will argue the following: The Parties agreed, and the Court directed, that each side would designate three sub-class I plaintiffs for whom damages trials would be held. The Plaintiffs designated three sub-class I Plaintiffs for trials: Katrina Mack, Joanne Maniscalco, and Marie Hudson. The Defendants submitted ten names to the Plaintiffs on February 6, 2002 and ten names on March 26, 2002, from which Plaintiff could find three women for damages trials. From those twenty women designated by the Defendants, the Plaintiffs submitted to the Defendants two women who would be available for damages trials: Filene Cutter and Maryann Ramos. Of those women, Plaintiffs were able to provide the criminal record for only one, Filene Cuttrer. The Defendants have submitted to the Court a Motion for Access to the C.O.R.I. record of Maryann Ramos. Until the Defendants have accessed the criminal record of Maryann Ramos, they will be unprepared to properly prepare for a damages trial as to that individual. Since the Defendants have sufficient information to go forward on a damages trial for one of its designated plaintiffs, the interests of justice will be served if the plaintiffs are also limited to trial on one of its designated plaintiffs.

If the Court denies the City of Boston's Motion to Continue the Trials and the Suffolk County Defendants' Motion to Limit Number of Damages Trials, the Suffolk

County Defendants propose the following schedule: June 3, 2002 jury selection for Katrina Mack and Joanne Maniscalco. Based upon Plaintiffs' estimate that the trials of Katrina Mack and Marie Hudson will take three to four days and the remaining trials will take two days, the Suffolk County Defendants propose June 17, 2002 to select juries for Marie Hudson and Filene Cutter, and July 1, 2002 to select juries for Maryann Ramos and Bronwyn Ford. This schedule assumes that the Court has scheduled mornings only for these cases, and that jury selection will take one to two days for each two juries selected.

### 2. The Plaintiffs' position

Plaintiffs oppose any continuance. The defendants have no basis for continuing the trial for Katrina Mack since she was deposed three years ago. The defendants should not be allowed to further delay this case.

## X. PROBABLE LENGTH OF TRIALS

The trials for Katrina Mack and Marie Hudson are expected to take three to four days. The other trials are expected to take two days.

## XI. VOIR DIRE PROCEDURES

### A. Plaintiffs

Counsel for the plaintiffs will be assisted by consultants from the National Jury Project during jury selection. Plaintiffs request that their consultants be allowed at counsel table for the plaintiffs. Plaintiffs further request that the consultants be identified to the jury as assistants to counsel for the plaintiffs.

Plaintiffs will be filing a motion regarding jury selection procedures. The procedures plaintiffs seek are the following:

1.  Selection of the jury from an enlarged panel of 75 prospective jurors.

2.  Requiring that each juror complete a written juror questionnaire before jury selection.

3.  Providing completed juror questionnaires to counsel for review overnight before jury selection.

4.  Questioning jurors in groups of 16.

5.  Asking follow-up questions to affirmative answers given in the juror questionnaire will be asked of jurors individually.

6.  Permitting the attorneys to address follow-up questions directly to jurors as appropriate.

7.  Using open-ended questions during their voir dire questioning.

8.  Assuming each side is permitted to exercise four peremptory challenges, a panel of 15 jurors be passed for cause before exercise of peremptory challenges.

9.  Peremptory challenges will be exercised by allowing each side to exercise its challenges in rounds starting with the plaintiff in the first round, then starting with the defendants in the second round, then starting a third round with the plaintiff's challenges until a jury is selected.

**B.**   **Defendant City of Boston**

The City reserves its right to be assisted by jury consultants during jury selection.

## XII. NAMES AND ADDRESSES OF WITNESSES

**A.**   **Plaintiffs**

    **1.**   **Katrina Mack**

        a.   Plaintiff Katrina Mack, 6 Bright Street, Waltham, MA.

        b.   Elizabeth Simpson, 99 Pine Street, Belmont, MA (factual).

  c. Amy (Covell) O'Neill, 20 Otis Street, Wakefield, MA (factual).

  d. Melissa Ramsdell, 9 Pitcairn Way, Ipswich, MA (factual).

  e. Alexandra Coughlin, 20378 N. 78th St., Scottsdale, AZ (factual).

  f. John Coughlin, 20378 N. 78th Street, Scottsdale, AZ (factual).

**2.** **Joanne Maniscalco**

  a. Plaintiff Joanne Maniscalco, 229 Bennington St., E.Boston, MA.

  b. Mark Warren, 229 Bennington St., E. Boston, MA (factual).

  c. Lorraine Dimonte, 508 Border St.#791, E.Boston, MA (factual).

**3.** **Filene Cutter**

  a. Plaintiff Filene Cutter, 8 Whitman Street, Dorchester, MA.

  b. Gail Granville, 10 Whitman Street, Dorchester, MA (factual).

**4.** **Marie Hudson**

  a. Plaintiff Marie Hudson, 1990 Columbus Av. #81, Roxbury, MA.

  b. Cornelius Hudson, 1990 Columbus Av. #81, Roxbury, MA (factual).

  c. Theresa Hudson, 2 Father Jacobbee Rd. #426, E.Boston, MA (factual).

  d. Sister Esther Garcia, Emmanuel House, 11 Newcomb Street, Boston, MA (factual).

  e. JoAnne Beach, 99 East Canton St. #17, Boston, MA (factual).

  f. Joanne King, Solomon Carter Fuller Mental Health Center, 85 East Newton Street, Boston, MA (medical).

  g. Karen Shaw, South End Outpatient Clinic, 1601 Washington Street, Boston, MA (medical).

  **5.** **Mary Ann Ramos**

    a. Plaintiff Mary Ann Ramos.

**B.** **Defendants**

The defendants propose the following witnesses for all five trials:

  **1.** **Defendant City of Boston**

    a. Dr. Martin Kelley, 850 Boylston St., Chestnut Hill, MA (expert).

  **2.** **Suffolk County Defendants**

    a. Officer Dale Dupree, 200 Nashua Street, Boston, MA.

**XIII.** **PROPOSED EXHIBITS**

**A.** **Katrina Mack**

  1. Booking card

  2. Written strip search policy

  3. Photographs of the Nashua Street Jail

**B.** **Joanne Maniscalco**

  1. Boston Police Department booking photograph

  2. Booking card

  3. Written strip search policy

  4. Photographs of the Nashua Street Jail

**C.** **Filene Cutter**

  1. Booking card

  2. Written strip search policy

  3. Photographs of the Nashua Street Jail

D.    **Marie Hudson**

    1.    Booking card

    2.    Written strip search policy

    3.    Photographs of the Nashua Street Jail

E.    **Mary Ann Ramos**

    1.    Booking card

    2.    Written strip search policy

    3.    Photographs of the Nashua Street Jail

## XIV.  PROPOSED PRELIMINARY JURY INSTRUCTIONS

A.    **Plaintiffs' proposal**

Before we begin, I want to explain to you what this case is all about.  I want to start by giving you a warning.  Some of the testimony you will hear is graphic.  Although the testimony may be difficult for you to hear, you must pay close attention to what is being said so you can do your job at the end of the trial.  Your job, in this trial, is to decide the amount of damages that the plaintiff should receive, if any, to compensate her for any emotional harm caused by being illegally searched.

Correctional officers unlawfully ordered the plaintiff to strip naked and display her private parts to the officer.  This search was illegal, that much already has been decided as a matter of law.  The plaintiff says that she was emotionally upset as a result of the search. You will decide if the search caused her harm and, if it did, you will decide on the amount of compensation for the harm.

16

Let me tell you a little bit about the facts. Between December 10, 1995 and September 20, 1999, all women who were arrested in the City of Boston, and who could not post bail, were sent to the Nashua Street Jail. Men who were arrested, on the other hand, were not transferred to the Nashua Street Jail. When the women arrived at the jail, female correctional officers ordered them to strip naked and open their private parts to the correctional officers. The search began when a female correctional officer ordered the woman to take off all of her clothing. Next, a correctional officer viewed the woman's nude body. The officer required the woman to bend over and spread her buttocks so that correctional officers could examine her anus and vagina. Because the City held male prisoners in cells in police stations, men who were arrested were not routinely required to remove their clothing.

It has already been decided that the search of the plaintiff was illegal. There is no dispute about that. As a result, the City and the County are legally responsible for any harm to the plaintiff caused by the illegal search.

You are here to decide the amount of money damages, if any, that should be awarded to the plaintiff. The plaintiff alleges that she suffered emotional damage after being forced to strip naked and have her body parts viewed. Emotional harm can be expressed as feeling violated, humiliated, degraded, shocked, or robbed of her dignity. It may seem odd to give the plaintiff money because she was humiliated, degraded, or robbed of her dignity. However, in our justice system, money is the only way we can

17

compensate people for their injuries. When one party has violated the law, the defendant is required to compensate the injured party. Money is the way a person is compensated. Damages are not meant to punish the City or the County but to compensate the victim. In this case, your job is to determine how much money the plaintiff should receive to compensate her for her injuries.

I instruct you not to consider how the City or the County will obtain the money to pay a verdict for the plaintiff when you decide this case. Your job is to decide an appropriate amount to compensate the plaintiff for her injuries. You must make this decision based on the evidence without considering the source of the payment.

Later on, after each side has had a chance to present evidence, I will give you more information about how to determine the amount of damages that the plaintiff should receive. For now, I just want to give you a brief explanation of what the case is about and give you a little bit of information about the evidence you will be hearing. Since I've already told you about the case, I will move on to the evidence.

Much of the evidence in this case will be in the form of witness testimony. In deciding the amount of damages that the plaintiff should receive, you will decide which testimony to believe and which testimony not to believe. It is solely for you, the jury, to determine the credibility of a witness's testimony. You may believe everything a witness says, or part of it, or none of it.

The plaintiff will testify about how she felt. You must not assume that the plaintiff is a bad person simply because she was arrested.

When the defendants present their case, they may have a correctional officer from the jail testify about the strip searches and the body cavity searches. Please keep in mind that the testimony of a government employee is not necessarily deserving of more or less consideration, or greater or lesser weight, than that of an ordinary witness.

When you are chosen to be on a jury, your most important job is to remain neutral. This is a tough job. You must remain unbiased. You should not make any decisions or evaluations until you have heard all of the evidence. It is important for you to consider all of the evidence and listen to what your fellow jurors have to say when you deliberate. At the end of the trial, I will give you more information about the law that will help you when you deliberate.

**B.    Suffolk County Defendants' proposal**

In lieu of paragraphs 1-5 of Plaintiffs' proposal, the Suffolk County Defendants propose the following:

This trial will determine the amount, if any, of damages that the plaintiff will receive for any emotional harm caused by being strip searched at the Suffolk County Jail. Although it is sometimes proper to strip search a person brought into a Jail, this court has ruled that it was not proper to strip search this plaintiff. The plaintiff says that she was emotionally upset by this search. Your job is to determine whether she has proven, with reasonable certainty, that she suffered emotional damages. If you do find that she

19

suffered emotional damages as a result of the strip search, you must then determine how much, if any, money she should receive for those emotional damages.

The plaintiff has not claimed that the behavior of the officer who conducted the strip search was objectionable. She claims only that the mere fact that she was strip searched has caused her such emotional distress that she should receive money to compensate her. The strip search was conducted by a female officer who took the plaintiff into a small room with no windows at the jail, and asked the plaintiff to remove her clothing. The officer then conducted the strip search without ever touching the plaintiff. The plaintiff was then given a uniform to wear and she was brought upstairs to the female unit at the Jail/brought into a holding cell where she was housed with other women.

RESPECTFULLY SUBMITTED,

For plaintiffs Katrina Mack, Joanne Maniscalco,
Filene Cutter and Mary Ann Ramos,
By their attorneys,

Howard Friedman
BBO #180080
Myong J. Joun
BBO #645099
**Law Offices of Howard Friedman**
90 Canal Street, Fifth floor
Boston, MA 02114-2022
(617) 742-4100

For plaintiff Marie Hudson,
By her attorney,


Patricia Garin, Esq.
BBO #544770
**Stern, Shapiro, Weissberg and Garin**
90 Canal Street, Fifth floor
Boston, MA 02114
(617) 742-5800


For defendant City of Boston
By its attorneys,


Eve Piemonte-Stacey
BBO #628883
Susan M. Weise
BBO #545455
**City of Boston Law Department**
Room 615, City Hall
Boston, MA 02201
(617) 635-4029


The defendants Suffolk County and Rouse:
By its attorneys,


Rose E. King
BBO #630973
Kathleen Cawley
BBO #551202
**Suffolk County Sheriff's Department**
200 Nashua Street
Boston MA 02114
(617) 989-6680

21